Mrs. Clifford **BROYLES**, Appellee,

v.

**FORD LIFE INSURANCE COMPANY,**
Appellant.

Supreme Court of Tennessee.

Feb. 25, 1980.

H. Douglas Nichol, Knoxville, for plaintiff-appellee.

Earl R. Layman, Knoxville, for defendant-appellant.

Frank L. Slaughter, Slaughter, Jackson, Cooper & Watson, Bristol, for appellant.

George F. Legg, Stone & Hinds, Knoxville, Shelton B. Hillman, Jr., Gore & Hillman, Bristol, for appellee.

## OPINION

COOPER, Justice.

This case involves a misrepresentation as to "state of health" on an application for credit life insurance. The question is whether the misrepresentation, which was found not to have been made with intent to deceive, increased the risk of loss to the insurer so as to void the policy. See T.C.A. § 56–1103.

Clifford Broyles purchased an automobile on May 11, 1977, and at the same time purchased a 36-month decreasing term life insurance policy from the appellant, Ford Life Insurance Company. Mr. Broyles signed a health statement on the application, declaring that he was in "good health" to the best of his 'knowledge. A place for exceptions or limitations on the general statement of health was left blank. Mr. Broyles died of leukemia on October 8, 1977. Appellant declined payment on the policy and appellee brought this action in contract.

It is undisputed in the record that Mr. Broyles was suffering from a blood disorder, consistent with leukemia, as early as July, 1976. His condition worsened; and, in March, 1977, his physician definitely diagnosed Mr. Broyles' illness as chronic lymphotic leukemia and began treatment accordingly. The medication given Mr. Broyles, a form of chemotherapy, had the potential for severe side effects. By April, Mr. Broyles was experiencing blurred vision, headaches, stomach disorder, and was unable to take some of the medication. Mr. Broyles also was undergoing tests at frequent intervals in an effort to determine the progress of the disease, the effectiveness of the medication, and its side effects. The treating physician would not say that he specifically told Mr. Broyles that he had "leukemia," but testified that Mr. Broyles positively knew he had a medical problem.

The chancellor found that Mr. Broyles did not know he had leukemia at the time he made application for credit life insurance. He also found that the insurer had failed to carry its burden of proving that the misrepresentations to the state of Clifford Broyles' health would have affected appellant's willingness to issue the policy. From this, he concluded that the policy of insurance was in force at the time of Mr. Broyles' death and that appellee was entitled to a judgment against appellant for $2,871.68.

The Court of Appeals affirmed the decree of the chancellor, but in doing so considered only the issue of "whether or not the decedent-applicant had knowledge of his poor health at the time the policy was issued."

T.C.A. § 56–1103 provides that "[n]o written or oral misrepresentation or warranty therein made in the negotiations of a contract or policy of insurance, or in the application therefor, by the assured or in his behalf, shall be deemed material or defeat or void the policy or prevent its attaching, unless such misrepresentation or warranty is made with actual intent to deceive, or unless the matter represented increases the risk of loss."

In this case, both the chancellor and the Court of Appeals found that decedent did not know he had leukemia at the time he made application for insurance. This

concurrent finding of fact, being supported by material evidence, is binding on this court. T.C.A. § 27–113. This leaves us with the single issue of whether the misrepresentation of the state of Mr. Broyles' health at the time he made application for insurance, though not made with knowledge, increased the risk of loss to appellant. As heretofore noted, the Court of Appeals did not specifically consider the issue. The chancellor did and held that there was no evidence that "the leukemia as referred to and pointed out in this record in any way increased the hazard or the exposure or the risk of the defendant, Ford Life Insurance Company." The chancellor emphasized that appellant called no witness to testify that its risk was enhanced by the decedent's misrepresentations or that the appellant would not have issued the policy had it known the true state of Mr. Broyles' health.

 Under T.C.A. § 56–1103, when it has been determined that the answers contained in the application are untrue, it becomes a question of law, not fact, for the court as to whether the misrepresentations materially increased the risk of loss. *Sloop v. Mutual of Omaha Ins. Co.*, 55 Tenn.App. 656, 404 S.W.2d 265 (1965); *Little v. Washington National Ins. Co.*, 34 Tenn.App. 593, 241 S.W.2d 838, 840 (1951). And, "[a]ny misrepresentation which naturally and reasonably influences the judgment of the insurer in making the contract is a misrepresentation that 'increases the risk of loss' within the meaning of the statute." *Little v. Washington National Ins. Co., supra.* See also *Volunteer State Life Ins. Co. v. Richardson*, 146 Tenn. 589, 244 S.W. 44, 49 (1922) wherein it is pointed out that:

> It is not to be left to the insurance company to say after a death has occurred that it would or would not have issued the policy had the answer been truly given. It is true the practice of an insurance company with respect to particular information may be looked to in determining whether it would have naturally and reasonably influenced the judgment of the insurer, but no sound principle of law would permit a determination of this question merely upon the say so of the company after the death has occurred. The matter misrepresented must be of that character which the court can say would reasonably affect the insurer's judgment.

 We are of the opinion that knowledge of the fact that Mr. Broyles had leukemia, his ongoing chemotherapy, and the side effects of the medication "naturally and reasonably" would affect the judgment of appellant and that the representation in this case that he was in good health did indeed increase the risk of loss.

The judgments of the lower courts are reversed. The case is remanded to the trial court for entry of a decree dismissing the action. Costs will be paid by Mrs. Clifford Broyles and her surety.

BROCK, C. J., and FONES, HENRY and HARBISON, JJ., concur.