**Bobby HOWELL, Plaintiff–Appellant,**

v.

**COLONIAL PENN INSURANCE COMPANY, Defendant–Appellee.**

No. 86–6184.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 15, 1987.

Decided Dec. 8, 1987.

Randy Hillhouse (argued), Freemon and Hillhouse, Lawrenceburg, Tenn., for plaintiff-appellant.

Clayton Farnham, Drew, Ecky and Farnham, Atlanta, Ga., Paul B. Plant, H. Michael Bagley (argued), Lawrenceburg, Tenn., for defendant-appellee.

Before MARTIN, JONES and BOGGS, Circuit Judges.

PER CURIAM.

The plaintiff, Bobby Howell, brought this diversity action against the defendant, Colonial Penn Insurance Company ("Colonial Penn"), for failure to pay on a homeowner's insurance policy. The district court granted summary judgment for the insurance company on the basis of section

56–7–103 of the Tennessee Code, Tenn. Code Ann. § 56–7–103 (1980), and the case law interpreting that section. Finding no error, we affirm.

## I.

On February 5, 1985, plaintiff, Bobby Howell, applied for a homeowner's insurance policy from the defendant, Colonial Penn. In his application, Howell represented, among other things, that he had *not* made any homeowner's insurance claims within the last three years and that he was *not* conducting business activities on the insured premises. Howell further represented that the statements made in the application were true. Defendant accepted Howell's application for insurance, and a policy was issued to him effective February 6, 1985.

On May 20, 1985, a fire destroyed Howell's home. Howell notified the insurance company of the loss, but, after the usual investigation, it refused to pay. In the company's view, the policy was void due to misrepresentations made by Howell in his application. Specifically, the defendant's investigation turned up that Howell had in fact made a claim under a homeowner's policy within the three year period prior to his application for insurance with defendant. That claim arose out of a fire that had occurred at Howell's personal residence on February 24, 1982. The loss was settled with Howell's former insurer on September 8, 1982. The investigation also turned up that Howell was operating a used car lot at the insured location. This was contrary to Howell's representation that no business activity was being conducted on the property.

On April 7, 1986, Howell filed this diversity action in the Middle District of Tennessee seeking to compel defendant to honor the insurance policy. The defendant answered by raising the two misrepresentations discussed above as a basis for voiding the policy. On August 29, 1986, the defendant filed a motion for summary judgment, again alleging that the misrepresentations allowed it to void the insurance policy that had been issued to Howell. On October 10, 1986, Judge Wiseman, applying Tennessee law, granted the defendant's motion. The court first found that the application contained a misrepresentation because Howell had filed a homeowner's insurance claim within the past three years. Then, applying the Tennessee anti-technicality statute, Tenn.Code Ann. § 56–7–103 (1980), the court concluded that the misrepresentation, regardless of whether it was intentional or not, voided the policy because it increased the risk of loss to the insurer as a matter of law. The court further held that its findings as to this misrepresentation were dispositive and so it was not necessary to address the alleged misrepresentation as to the operation of the business on the insured premises. Howell then filed this timely appeal.

## II.

Because this is a diversity action, Tennessee law applies. The statutory provision with which we are concerned in this case is Tenn.Code Ann. section 56–7–103 (1980), which provides as follows:

> No written or oral misrepresentation ... made in the negotiations of a contract or policy of insurance, or in the application therefor, by the assured or in his behalf, shall be deemed material or defeat or void the policy or prevent its attaching, unless such misrepresentation ... is made with actual intent to deceive, or unless the matter represented increases the risk of loss.

The courts of Tennessee have had several opportunities to address claims arising under this statute. From these cases it is clear that in order to avoid coverage under the statute, an insurer must prove two things. First, he must prove that the answers to the questions on the application were false. Then he must demonstrate that the misrepresentation was material, which requires proving *either* that the false answers were given with intent to deceive the insurer *or* that the false answers increased the risk of loss. *Womack v. Blue Cross & Blue Shield*, 593 S.W.2d 294 (Tenn.1980). If a misrepresentation is found to increase the risk of loss, the policy

is voidable under the statute even if the misrepresentation was innocently made. *Lane v. Travelers Indemnity Co.*, 499 S.W.2d 643 (Tenn.App.1973); *see also Bagwell v. Canal Ins. Co.*, 663 F.2d 710, 711 (6th Cir.1981) (per curiam).

The issues of whether a misrepresentation exists and whether false answers were given with "intent to deceive," are questions of fact to be determined by the fact-finder. Tennessee courts have consistently held that the determination of these factual questions should be made by a jury and not by a court on a summary judgment motion, unless reasonable minds could reach only one conclusion. *Womack*, 593 S.W.2d at 296. Once it is determined that a misrepresentation exists, it is a question of law, not fact, for the court as to whether the misrepresentation increased the risk of loss. *Id.; Johnson v. State Farm Life Ins. Co.*, 633 S.W.2d 484, 487–88 (Tenn.App.1981) (quoting *Broyles v. Ford Life Ins. Co.*, 594 S.W.2d 691, 693 (Tenn.1980)).

### III.

#### A.

■ In this case the district court concluded that there was a misrepresentation by Howell in his response to the question on the application regarding homeowner's claims filed within the past three years. It was proven by the company that within three years prior to filling out the insurance application on February 5, 1985, Howell had indeed filed (on February 24, 1982) a claim for a fire loss. Howell does not dispute the fact that his answer to this question was inaccurate. He argues, however, that the answer was not a material misrepresentation within the statute because he had completed the application to the best of his knowledge and had not intended to give a false answer. This argument displays a misunderstanding of the applicable legal principles.

In determining whether a misrepresentation exists under section 56–7–103, a fact-finder must first determine "what the insurer asked, required, or expected the applicant to represent." *Gatlin v. World Service Life Ins. Co.*, 616 S.W.2d 606, 608 (Tenn.1981). In a situation such as this, where the question is specific and unambiguous (*i.e.*, "Have you had any homeowner's insurance claims in the last three years?"), the fact-finder can easily establish whether the answer is true or not. *Id.* at 610 (quoting *Ford Life Ins. Co. v. Jones*, 262 Ark. 881, 563 S.W.2d 399, 402–03 (1978) (Harris, C.J., concurring)). The good faith (or lack thereof) of the person filling out the application is irrelevant in making *this* determination. Once it is determined that a misrepresentation exists, the inquiry under the statute proceeds to a determination of materiality, i.e., whether the misrepresentation was made with intent to deceive *or* whether it increased the risk of loss. *Gatlin*, 616 S.W.2d at 608. In this case, because the lower court held that the misrepresentation increased the risk of loss, it could find the misrepresentation material and void the policy *without regard* to whether or not Howell had intended to deceive the insurer. Accordingly, Howell's supposed good faith is simply not relevant to either the existence of a misrepresentation or whether that misrepresentation was material.

■ Howell also claims that a jury should have been given the opportunity to decide whether there was a material misrepresentation. This argument is without merit. The threshold question of whether a misrepresentation exists is a question of fact which should ordinarily be determined by a jury if one is requested. But where reasonable minds could reach only one conclusion as to whether the answer was true or false, the court can decide the issue on its own. That is the situation here. In fact, Howell does not even allege that his answer on the application was true or that he misunderstood the question. Accordingly it was not error for the district court to determine the existence of a misrepresentation in a motion for summary judgment. Further, because the issue of whether the misrepresentation increased the risk of loss is a question of law, there is no basis for arguing that a jury should have passed on this question.

## B.

■ Having concluded that the district court correctly determined that a misrepresentation existed, we next must decide whether the lower court was correct in concluding as a matter of law that Howell's misrepresentation on the insurance application increased the risk of loss.

Tennessee courts have consistently held that "any misrepresentation which naturally and reasonably influences the judgment of the insurer in making the contract is a misrepresentation that 'increases the risk of loss' within the meaning of the statute." *Broyles v. Ford Life Insurance Co.*, 594 S.W.2d 691, 693 (Tenn.1980) (quoting *Little v. Washington National Ins. Co.*, 34 Tenn. App. 593, 241 S.W.2d 838, 840 (1951)); *Bagwell v. Canal Ins. Co.*, 663 F.2d at 712. Further, a misrepresentation "naturally and reasonably influence[s] the insurer's judgment" if it "den[ies] the insurer information which they in good faith sought to discover, and which they must have deemed necessary to an honest appraisal of insurability." *Johnson*, 633 S.W.2d at 488. The fact that a plaintiff's misrepresentation in no way contributed to the loss is not relevant in the determination of whether the misrepresentation inreased the risk.

As mentioned earlier, the determination of whether a misrepresentation increases the risk of loss is to be made by the court as a matter of law. While the practice of the insurance company is relevant to this determination, the ultimate decision is to be made by the court. As explained by one Tennessee court:

> It is not to be left to the insurance company to say after a [loss] has occurred that it would not have issued the policy had the answer been truly given. It is true the practice of an insurance company with respect to particular information may be looked to in determining whether it would have naturally and reasonably influenced the judgment of the insurer, but no sound principle of law would permit a determination of this question merely upon the say so of the company after a [loss] has occurred. *The matter misrepresented must be of that charac-*

*ter which the court can say would reasonably affect the insurer's judgment.* *Broyles*, 594 S.W.2d at 693 (emphasis added) (citing *Volunteer State Life Ins. Co. v. Richardson*, 146 Tenn. 589, 244 S.W. 44, 49 (1922)).

In this case the lower court concluded that "an insured's prior loss history is a factor that a reasonable and prudent insurer would take into account in issuing a policy," J.App. at 118, and that therefore Howell's misrepresentation increased the risk of loss. We agree. Information as to prior loss history is of utmost importance to insurance companies, relying as they do on statistical data in making coverage decisions. It is the kind of information which would cause an insurance company to look further into the matter and make additional inquiries. In the language of the *Johnson* court, it is information which the insurer "in good faith sought to discover and which they must have deemed necessary to an honest appraisal of insurability." *Johnson*, 633 S.W.2d at 488. Accordingly it was not error for the district court to conclude that Howell's misrepresentation as to his prior fire loss increased the risk of loss.

Howell argues that the misrepresentation as to prior claim history was not sufficient by itself for the district court to find as a matter of law that the risk of loss increased. Specifically, Howell contends that throughout this case the insurance company has always tied together the two alleged misrepresentations—i.e. prior loss history *and* operation of a business on the premises—in arguing that the policy would not have been issued. In Howell's view, the company has never indicated, and its business practices do not suggest, that it would have refused to issue the policy *solely* on the basis of the misrepresentation as to prior claim history. Therefore, Howell concludes, because the district court did not address the misrepresentation as to operation of a business, its conclusion that the risk of loss increased was not supported by the evidence and must be reversed. This argument is without merit.

Our review of the application for insurance and the affidavit of the underwriter

responsible for the review of Howell's application, reveals that *either* or *both* of the misrepresentations would have caused the application to be rejected. The application distinctly and separately requested information regarding any homeowner's insurance claim in the past three years, question number 14, or whether the insured conducted business activities on the premises, question number 15. The two questions are completely unrelated and there is no basis for believing that the company would not have issued the policy only if *both* had been answered falsely. This interpretation is confirmed by the underwriter's affidavit.[1] While the affidavit does mention both misrepresentations, that fact does not allow for the inference that the company would have issued the policy had only *one* of the misrepresentations existed. Rather, the insurance company made both arguments because that was its strongest position. It never suggested, contrary to Howell's assertion, that the misrepresentation as to prior claim history would have been by itself an insufficient basis upon which to premise a denial of coverage.

Finally, Howell argues that the three year time period used by the insurance company was arbitrary. He therefore believes that since his prior loss was only 18 days shy of being outside the three years period, the misrepresentation as to that fact cannot be said to increase the risk of loss as a matter of law and should not be held to void the insurance policy on summary judgment. While admittedly this argument has some emotional appeal, it cannot succeed. The time period was clearly and specifically stated, and Howell had a duty to answer the question truthfully. By arguing in essence that his answer was "close enough," Howell invites this court to engage in arbitrary line drawing. We refuse this invitation. Courts would be taking on an impossible task if they were to second guess every factor an insurance company uses in making its coverage decisions. Instead, under Tennessee law, in order to conclude that a misrepresentation increases the risk of loss a court need only find that the matter misrepresented would reasonably affect the insurer's judgment. *Broyles*, 594 S.W.2d at 693. Such can be said of the misrepresentation here. Accordingly the district court's decision is AFFIRMED.

---

1. The affidavit states:

 Mr. Howell's representations that he had no prior losses within three years of the application and that no business was being conducted on the premises influenced my judgment in handling the insurance contract on behalf of Colonial Penn, since information contrary to the representation made by Mr. Howell would be indicative of an increased risk of loss, and had such information been known, I would have rescinded Colonial Penn's offer of insurance coverage and ongoing insurance coverage under a homeowner's policy would not have been provided to Mr. Howell.

 J.App. at 17.