972 F.2d 347
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Frances HARRIS and Rhonda Harris, Plaintiffs-Appellants,
v.
PENNSYLVANIA NATIONAL INSURANCE COMPANIES, Defendant-Appellee.
 No. 91-6373.
 United States Court of Appeals, Sixth Circuit.
 July 27, 1992.
 
 Before KEITH and RYAN, Circuit Judges, and WEBER, District Judge.*
 PER CURIAM:
 
 
 1
 Plaintiffs-Appellants Frances Harris and Rhonda Harris appeal from the summary judgment dismissal of their diversity action to recover benefits under a homeowners insurance policy. Because the district court incorrectly determined that there were no genuine issues of material fact, we REVERSE and REMAND.
 
 I.
 
 2
 Charles Harris, now deceased, and his wife, Frances, filed this action in the Circuit Court for Marion County, Tennessee, to recover benefits from a homeowner's insurance policy issued by Penn National Insurance Company ("Penn National"). The request for recovery was filed after a fire destroyed Harris' home in Marion County. Penn National removed this action to the United States District Court for the Eastern District of Tennessee pursuant to 28 U.S.C. § 1332. Rhonda Harris, daughter of Charles Harris and administratrix of her father's estate, has been substituted as a party plaintiff.
 
 
 3
 The district court memorandum opinion provided the following background facts:
 
 
 4
 Charles and Frances Harris were the owners of the improved real property. Penn National issued a homeowner's insurance policy to cover their residential dwelling and its contents for fire loss. The house and its contents were destroyed by fire on June 10, 1989. Plaintiffs filed a claim with Penn National but Penn National refused to pay the claim. The complaint avers that Penn National has acted in bad faith and plaintiffs are entitled to recover a bad faith penalty pursuant to Tenn.Code Ann. § 56-7-105, in addition to the insurance benefits available under the policy.
 
 
 5
 Penn National denies liability and contends that the complaint should be dismissed because either Charles Harris or someone acting on his behalf provided false information in the insurance application concerning his fire loss history which renders the policy voidable. The record shows that Charles Harris obtained the policy through the Ed Matheson Insurance Agency in Manchester, Tennessee. Penn National issued the homeowners policy on the basis of an application made in October 1986, which stated "None" in the blank space provided for loss history. Charles and Frances Harris had previously made an insurance claim for a house destroyed by fire on about November 11, 1984. A check in the amount of $23,700 was issued to Charles Harris, Frances Harris, and Mid State Homes, Inc. on December 18, 1984, in payment of a fire loss under a policy issued by the International Insurance Company....
 
 
 6
 The events and circumstances leading up to the application for the Penn National homeowners policy through the Ed Matheson Insurance agency in October 1986 are particularly important. The house in question, owned by Charles Harris, had previously been covered for fire loss during the period of time from October 18, 1983 through October 18, 1985, with the Southeastern Fire Insurance Company. From October 18, 1985 through October 18, 1986, Charles Harris' house had insurance coverage through a policy with the American Employers Insurance company, which was a subsidiary of the Commercial Union Group. Johnny Hendrix ("Hendrix") of Hendrix Insurance Services in Tracy City, Tennessee, was the insurance agent who handled these two previous policies concerning the Charles Harris residence. Hendrix received notice from the insurance companies he represented in 1986 that they planned to cease writing insurance in Tennessee and more specifically, that the policy with Charles Harris not be renewed and would lapse effective October 18, 1986.
 
 
 7
 Hendrix testified in his deposition that he decided to assist Charles Harris and his other customers to obtain insurance coverage through a different agent and company. Hendrix contacted Ed Matheson and inquired whether he would be interested in perhaps taking an application from Charles Harris. Matheson was interested in the opportunity to obtain Mr. Harris' business so Matheson and Hendrix made arrangements to travel together to meet with Charles Harris in his home so Matheson could view the property and complete an application form.
 
 The district court further noted:
 
 8
 The Court has reviewed the depositions and affidavits of all witnesses including Matheson and Hendrix. Although there is no definite proof as to whether it was Charles Harris or Hendrix who provided the false information about the fire loss history to Matheson, the Court finds it is clear beyond any reasonable dispute that Matheson received the false loss history either from Charles Harris or Hendrix who was acting in behalf of Mr. Harris as his friend and former insurance agent. If the false information about the fire loss history did not come directly from Charles Harris, then the only reasonable, logical conclusion is that it came from Hendrix and his insurance business records.
 
 
 9
 It is not disputed that the district court properly found that the application in October of 1986 falsely represented that the Harris' had sustained no prior fire losses. Because the record is unclear as to the source of the loss history information, however, we REVERSE the grant of summary judgment.
 
 II.
 
 10
 A party may obtain summary judgment if the court properly determines from the evidence on file "that there is no issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56. We review the district court's grant of summary judgment de novo. White v. Turfway Park Racing Ass'n, Inc., 909 F.2d 941, 943 (6th Cir.1990). We must view all facts and inferences in the light most favorable to the nonmoving party, and the moving party shoulders the burden for showing that no genuine issue of material fact exists. Id. Note, however, that the nonmoving party may not rest on its pleadings, but must come forward with some probative evidence which would make it necessary to resolve the factual dispute at trial. Id. at 943-44. See also Celotex Corp. v. Catrett, 417 U.S. 317 (1986).
 
 
 11
 The district court rooted its ruling on the supposition that if Charles Harris did not supply the information, Hendrix, in his capacity as friend or former insurance agent, provided Matheson and Penn National with the false loss history. The record below contains the affidavits of Rhonda Harris and Frances Harris stating that the signature on the insurance application is not that of Charles Harris. Moreover, Hendrix testified in his deposition that he did not know who signed the application or when it was signed. Additionally, Hendrix did not recall either himself or Charles Harris giving Matheson any loss history information.
 
 
 12
 Penn National counters with the affidavits of several of its employees which state that Penn National would not have insured the Harris home had it been aware of the prior fire losses. Most notable is the affidavit of Matheson which states in pertinent part:
 
 
 13
 ... I took the uncompleted application out with me, asked the questions on the application, made notes of the answers, and the application was signed either by Mr. Harris or by Mr. Hendrix.... The statement that the application "was finalized in Mr. Hendrix' office" simply means that I got the information as to the address and coverage desired there. The application was not typed in at Hendrix' office, but at my office from the notes that I had made at the interview.
 
 
 14
 I did not copy from any old application of Mr. Hendrix, and in fact have just now been shown the Harris application to American Employers dated September 26, 1985 signed by Johnny Hendrix and not signed by Harris or anyone for him.... (emphasis added).
 
 
 15
 Given the apparent contradictory nature of the information regarding the signature on the October 1986 application for homeowner's insurance, a genuine issue of material fact still exists as to the source of the loss history. Matheson alleges in his affidavit that the "Charles Harris" signature was provided by either Hendrix or Harris, himself. Harris' daughter and widow have both sworn, however, that the signature was not authentic. Note also that, on the American Employers Insurance application of September 1985, Hendrix subscribed his own name and not that of Harris. The content of these affidavits places this material fact in issue. If neither Harris nor Hendrix provided the loss history information, no false representation was made. We believe that the district court improperly assessed the weight of the evidence regarding the source of the loss history and the signature. See 60 Ivy Street, 822 F.2d 1432, 1435-36 (6th Cir.1987) (the court is not to weigh the evidence, judge the credibility of the witnesses, or determine the truth of the matter in a motion for summary judgment); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). Further factfinding on this issue of material fact must take place.
 
 
 16
 We, therefore, reverse the district court's grant of summary judgment and remand the case to the district court for proceedings consistent with this opinion.
 
 
 
 *
 The Honorable Herman J. Weber, United States District Judge for the Southern District of Ohio, sitting by designation