60 F.3d 829
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 TAPCO UNDERWRITERS INC., Plaintiff-Appellant,
v.
Sam and Catherine BRAGG, Defendants-Appellees.
 Nos. 94-5419, 94-5580.
 United States Court of Appeals, Sixth Circuit.
 July 6, 1995.
 
 Before: BOGGS and BATCHELDER, Circuit Judges; and QUIST, District Judge.*
 PER CURIAM.
 
 
 1
 Plaintiff-appellant Tapco Underwriters, Inc., sought a declaratory judgment that its policy with Sam and Catherine Bragg was void ab initio due to alleged misrepresentations in their insurance application; the Braggs counterclaimed for the policy proceeds. A jury found for the Braggs, and Tapco appeals. We affirm.
 
 
 2
 * The Braggs own their home and an adjacent trailer court in Whitwell, Tennessee. In 1991, the Braggs' home burned down, and they used the insurance proceeds to rebuild. Needing additional money to complete the house, the Braggs inquired about a loan from Family Financial, which told them they needed to have their home insured. Family Financial offered to help the Braggs get the requisite insurance, and it sent a representative to see Sam Bragg. Family Financial's employee collected information for an application for insurance with Allstar Insurance Group, Inc. Sam Bragg claims that he told them about the 1991 fire and his ensuing insurance claim, as well as about several other fires at uninsured rental trailers in the park. Shortly thereafter, Bragg claims he received a copy of the completed application.
 
 
 3
 Dissatisfied with Family Financial's rates, Bragg sought a loan from K & T Service, which told him that he could use the same information given to Family Financial for the policy with Allstar Insurance. The Braggs signed the completed application, a standard "ACORD homeowner application form 80(2/89)." Under the category "Loss History," was written "1 fire loss not sure of dates." Allstar Insurance submitted the application to Tapco Underwriters, Inc., who issued an insurance policy effective May 8, 1992.
 
 
 4
 On August 3, 1992, a fire completely destroyed the Braggs' home. In the process of investigating the claim, Tapco discovered several incident reports completed by the local fire department. Contending that Bragg's failure to disclose seven prior trailer fires was a misrepresentation, Tapco sought a declaratory judgment voiding the policy. Bragg claims that these fires were not "losses" because the trailers were not insured and he did not file claims; it is undisputed that the only claim resulted from the 1991 fire.
 
 
 5
 Tapco sued the Braggs[1] in federal district court, based on diversity of citizenship, and demanded a jury trial. The district court rejected Tapco's motion for summary judgment because genuine issues of material fact existed as to whether Bragg made a misrepresentation. The court found that the term "Loss History" was ambiguous because it "may fairly be understood in more ways than one," so a jury was needed to construe the language and decide whether Bragg had falsely stated his loss history. After deliberating for thirty minutes, the jury found for the Braggs. Tapco moved for judgment as a matter of law or, in the alternative, a new trial, both of which the court denied.
 
 
 6
 Tapco again argues on appeal that it was entitled to a directed verdict because there was no ambiguity in the term "loss history," and therefore, as a matter of law, the Braggs misrepresented their loss history on the application. Additionally, Tapco contends that the district court abused its discretion in admitting various evidence and testimony concerning customary insurance practices and language.
 
 II
 
 7
 In diversity cases, a motion for a directed verdict or judgment as a matter of law is governed by state law. Gafford v. General Elec. Co., 997 F.2d 150, 170 (6th Cir. 1993). Tennessee law directs a court to take the strongest legitimate view of the evidence in favor of the non-movant, allow all reasonable inferences in his favor, disregard all countervailing evidence and direct a verdict only if reasonable minds could draw but one conclusion. Crosslin v. Alsup, 594 S.W.2d 379, 380 (Tenn. 1980).
 
 
 8
 The insurer has the burden of proving that an answer on an insurance application was false, and that the alleged misrepresentation was material. Howell v. Colonial Penn Ins. Co., 842 F.2d 821, 822 (6th Cir. 1987); McDaniel v. Physicians Mut. Ins. Co., 621 S.W.2d 391, 393 (Tenn. 1981). Tennessee law finds a contractual term ambiguous only where it is "of uncertain meaning and may fairly be understood in more ways than one." Farmers-Peoples Bank v. Clemmer, 519 S.W.2d 801, 805 (Tenn. 1975). The issue of whether a misrepresentation exists is ordinarily a question of fact for the jury, except where reasonable minds could reach but one conclusion. Howell, 842 F.2d at 823; McDaniel, 621 S.W.2d at 393 (ordering a new trial where lower court ruled as a matter of law that "'sickness/accident' was synonymous with 'disability' insurance").
 
 
 9
 Tapco cites two cases as establishing that "loss history" is unambiguous as a matter of law: Cox v. Nationwide Mut. Fire Ins. Co., 1989 WL 85754 (Tenn. App. Aug. 1, 1989), and Home Ins. Co. of New York v. Cavin, 137 So. 490 (Miss. 1931). Neither case is persuasive. Cox is distinguishable because in that case there was no dispute that Ms. Cox made false statements: "she testified on direct examination one set of circumstances, [and] on cross-examination in three instances she says, 'I knew I was turned down because of my loss history."' 1989 WL 85754, at * 3. In fact, the parties and the court in Cox seemed to use the term "loss" to refer to insured losses. Id. at * 1-2, 4. Likewise, in Cavin, the Mississippi Supreme Court found that the question "Have you ever suffered loss by fire, and if so, when and how did fire originate?" was unambiguous and meant any loss, not only insured losses. In any case, the opinion of the Mississippi Supreme Court in 1931 has no bearing on Tennessee law, especially where no Tennessee court has cited Cavin. At best it is old and possibly persuasive authority.[2]
 
 
 10
 Although the Tennessee Supreme Court affirmed a directed verdict in Beasley v. Metropolitan Life Ins. Co., 229 S.W.2d 146 (Tenn. 1950), that case can also be distinguished as involving admittedly false answers. The Beasleys maintained that they gave truthful information to an insurance agent, who then wrote the wrong answers on the application. They claimed not to have read the form, either when they signed it or when it was delivered to them. Id. at 147. The court ruled that, having signed the form, they were bound by their unambiguous and concededly false statements. Similarly, in Howell v. Colonial Penn Ins. Co., summary judgment was held to be proper where an insured answered "no" to the specific and unambiguous question "Have you had any homeowner's insurance claims in the last three years?" 842 F.2d at 822-23 ("Howell does not even allege that his answer on the application was true or that he misunderstood the question").
 
 
 11
 Ironically, Howell actually supports the Braggs' position because the court used the phrase "loss history" in its own opinion to refer to the insured's prior insurance claims. A computer search of the phrase "loss history" reveals that courts routinely use "loss" and "loss history" to refer to insured claims. See, e.g. Harris v. Pennsylvania Nat'l Ins. Cos., No. 91-6373, 1992 WL 175983 (6th Cir. July 27, 1992); Loyd v. Farmers Mut. Fire Ins. Co., 838 S.W.2d 542 (Tenn. App. 1992); Doggett v. Allstate Ins. Co., No. 02A01-9107-CV-00148, 1992 WL 43286 (Tenn. App. March 10, 1992); Pack v. Allstate Ins. Co., No. C.A. 1278, 1989 WL 98059 (Tenn. App. Aug. 25, 1989); McCoy v. Penn. Nat'l Mut. Casualty Ins. Co., No. C.A. 759, 1987 WL 10687 (Tenn. App. May 13, 1987). Their usage of the term implicitly endorses Bragg's interpretation, making it unlikely that the term can have only the meaning urged by Tapco. If courts of law can use the term in this manner, we should not deny the same possibility to an insurance purchaser with an eighth-grade education.
 
 
 12
 Moreover, as the drafter of the language, Tapco could easily have tailored the application to elicit whatever information it needed. Tapco assumed the risk of receiving a variety of responses when it used the vague and general heading "loss history" over a blank space on a generic application form, rather than asking for the specific information it desired.
 
 III
 
 13
 Tapco also contests the trial court's admission of evidence and testimony concerning standard practices, language, and procedures in the insurance agency in order to assist the jury in resolving the ambiguity surrounding the phrase "loss history."
 
 
 14
 A lower court's ruling as to the admissibility of evidence will not be disturbed unless there is a clear abuse of discretion. Geisler v. Folson, 735 F.2d 991, 997 (6th Cir. 1984). A court will find an abuse of discretion where the court has a "definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." Balani v. INS, 669 F.2d 1157, 1160 (6th Cir. 1982) (citations omitted). The court's inquiry is limited to whether the circumstances clearly demonstrate the district court acted unjustifiably. NLRB v. Guernsey-Muskingum Elec. Coop., Inc., 285 F.2d 8, 11 (6th Cir. 1960).
 
 
 15
 Tapco cites no relevant cases supporting its claim that the district court was barred from admitting evidence other than the application itself, but instead contends that "once an insured signs an application for insurance, [he] is bound by the representations therein" so that "he may not thereafter introduce proof which purports to vary the answers contained on the application." Pet. Brief at 19. The first clause is undeniably correct, but Bragg is not disclaiming or repudiating his response on the form -- he admits that he suffered only one fire loss. Evidence that explains the nature of a party's representations does not "vary" those answers; the district court's preliminary finding that Bragg's answer was ambiguous necessarily assumes that the application did not convey one fixed meaning.
 
 
 16
 Further, in the cases cited by Tapco for this proposition, the insureds either tried to justify admittedly false answers on an application or they disclaimed responsibility for false answers on the ground that they had not read the form they signed. See Giles v. Allstate Ins. Co., Inc., 871 S.W.2d 154 (Tenn. 1993); Beasley, 229 S.W.2d 146; Cauthron v. Allstate Ins. Co., No. 01A01-9407-CV-00327, 1994 WL 676525 (Tenn. App. Dec. 2, 1994). Courts have rejected the latter argument because it would render the written contract meaningless and, as to the former argument, Bragg has never conceded that his answer was false. The proof offered at trial was offered not to vary his answer, but to provide support for his interpretation of the ambiguous term. Moreover, Tapco can hardly object to such extrinsic evidence when it also offered similar testimony to buttress its position. For example, an insurance agent testified about his conversation with Sam Bragg, as well as his and Tapco's purpose in soliciting information about loss history.
 
 
 17
 Tapco also objects to the expert testimony of Buddy Miles about the meaning of "loss history" within the insurance industry. Such testimony clearly satisfies Rule 702 of the Federal Rules of Evidence, because it could assist the jury in evaluating the evidence. Additionally, Tapco asserts that testimony concerning the meaning of "loss history" to other insurers was irrelevant to the meaning that it attached to the term, and that Miles was a poor expert because he had no experience with Tapco. However, Tapco's idiosyncratic or subjective definition of "loss history" was not at issue in the case -- the relevant inquiry was determining the intentions of the parties. Therefore, the commonly-understood meaning within the industry was especially relevant because the application form was not specific to Tapco, but a generic "ACORD 80(2/89)" form used by several insurance companies. Accordingly, the Bragg's cross-examination of Tapco's witness about a different Tapco insurance application, as well as another company's homeowner's form, was also relevant.
 
 IV
 
 18
 Because the district court neither erred as a matter of law in submitting this case to a jury, nor abused its discretion in its evidentiary rulings, we AFFIRM the judgment for Sam and Catherine Bragg.
 
 
 
 *
 The Honorable Gordon J. Quist, United States District Judge for the Western District of Michigan, sitting by designation
 
 
 [1]
 Tapco also sued Fleet Finance Company as the holder of the Braggs' mortgage, but Fleet was dismissed from the suit
 
 
 [2]
 In fact, an Arkansas court recently treated Cavin in just that fashion, on facts almost identical to these, in Deal v. Farm Bureau Mut. Ins. Co. of Arkansas, Inc., 889 S.W.2d 774 (Ark. App. 1994). In an application to insure his trailer, Norman Deal responded "no" to the question "Has anyone in your household had any fire losses?" even though his mobile home had burned down in 1976. Id. at 775. Deal claimed that his answer was correct based on his understanding of the application, since he never made an insurance claim. The trial court held that the term "fire losses" was unambiguous and granted the insurance company's motion for summary judgment. The appellate court reversed, citing numerous definitions of "loss" that included damage giving rise to an insurer's liability. Id. at 776. The court conceded that Cavin's query of "[h]ave you ever suffered a loss by fire" presented a "closer case," but disagreed with its conclusion, noting "we are not bound by a decision of the Mississippi court." Ibid