NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0391n.06

Case No. 22-5811

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| IVA JOY; WILLIAM JOY, | ) | |
| Plaintiffs-Appellees, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TENNESSEE |
| | ) | |
| AMGUARD INSURANCE COMPANY, | ) | |
| Defendant-Third Party Plaintiff-Appellant, | ) | |
| | ) | OPINION |
| ANTHONY LANCASTER INSURANCE AGENCY, INC.; ANTHONY LANCASTER, | ) | |
| Third-Party Defendants-Appellees. | ) | |

Before: SUTTON, Chief Judge; DAVIS and MATHIS, Circuit Judges.

**MATHIS, Circuit Judge.** Iva and William Joy brought this action for breach of contract and bad-faith denial of an insurance claim against AmGuard Insurance Company for AmGuard's failure to cover a loss on a homeowners' insurance policy after a fire destroyed the Joys' home. AmGuard denied the Joys' claim because Iva Joy misrepresented that the Joys had automatic sprinklers in their home when applying for the homeowners' policy. AmGuard brought a third-party action against the Anthony Lancaster Insurance Agency, Inc. and its owner, Anthony Lancaster (collectively, the "Lancaster Agency"), for indemnification based on the Lancaster Agency's participation in filling out the Joys' insurance application, which contained the

misrepresentation. Following a three-day jury trial, a jury returned a verdict in favor of the Joys and the Lancaster Agency. After the trial, the district court determined that AmGuard could not void the Joys' policy because AmGuard failed to prove that Iva Joy's misrepresentation increased the risk of loss to AmGuard as required to void an insurance policy under Tennessee law. Finding no error, we affirm.

**I.**

In December 2019, Iva Joy applied to AmGuard for a homeowners' insurance policy (the "Policy"). To complete the application, Iva Joy worked with Shunnica Ayers, an employee of AmGuard's authorized agent, the Lancaster Agency. Ayers prepared a "Proposal of Insurance" for the Joys, which erroneously indicated that the Joys' home was equipped with an automatic sprinkler system "in all areas except attic, bathroom, closet, & attached structure areas." R. 56-3, PageID 594. In fact, the Joys only had an outside irrigation system. Iva Joy signed the Proposal of Insurance. AmGuard accepted the Proposal of Insurance and issued the Policy to the Joys, effective December 18, 2019, to December 18, 2020. The Policy provided coverage for the Joys' residence, personal property, and additional living expenses. The Joys received a discount of approximately $200 on their annual premium based on supposedly having an automatic sprinkler system.

The Policy's declarations page stated: "As a condition of this insurance, you MUST maintain the protective devices or services shown below and discussed on form HO 99 83 attached to your policy. You should also be prepared to supply proof of proper maintenance upon request." R. 56-3, PageID 498. The protective device referenced and "shown below" was a "[s]prinkler: in all areas except attic, bathroom, closet & attached structure areas." *Id.* The Policy also contained a protective-devices endorsement for the automatic sprinkler system.

On May 5, 2020, a fire destroyed the Joys' home. The Joys filed a claim with AmGuard, but AmGuard denied coverage on May 13, 2020, because the home did not contain automatic sprinklers.

On June 16, 2020, the Joys tendered a bad-faith notice to AmGuard. The Joys then sued AmGuard for the following claims relevant to this appeal: (1) breach of contract, and (2) statutory bad faith, in violation of Tenn. Code Ann. § 56-7-105.

AmGuard filed a third-party complaint against the Lancaster Agency alleging that it was liable to AmGuard for indemnity based on the Lancaster Agency's alleged breach of the Agency Agreement and Addendum to Agency/Brokerage Agreement (the "Agency Agreement").

The case proceeded to a jury trial on June 27, 2022. Over three days, the jury heard testimony from the Joys; Lancaster; Ayers; and Dawn Aigeldinger, AmGuard's assistant vice president of personal lines. Iva Joy testified that Ayers filled out the Proposal of Insurance on her behalf. According to Iva Joy, Ayers never asked her any questions about sprinklers. Iva Joy further testified that she did not sign any documents while meeting with Ayers, but she authorized Ayers to sign her name to the documents later. When asked, Iva Joy admitted that the outside irrigation system was not a protective device for the home.

Lancaster testified that the Joys were longtime customers of the Lancaster Agency and that Ayers entered the Joys' data into their system, which was used to produce the Proposal of Insurance. Lancaster also testified that the presence of automatic sprinklers did not affect the insurability of the home because it was not a consideration within the insurance industry guidelines as to whether to issue a policy. Ayers testified that she was aware that the Joys had an outside irrigation system, what she referred to as a sprinkler system, and based on this knowledge, she

answered the question regarding automatic sprinklers in the Proposal of Insurance in the affirmative.

Aigeldinger was not directly involved with the evaluation of the Joys' insurance application or claim, but she testified that if "no" had been checked as to the presence of automatic sprinklers in the Proposal of Insurance, AmGuard still would have issued a policy, but it would have been "a different policy, [with] a different premium[.]" R. 167, PageID 1872. Aigeldinger also testified that AmGuard's risk of loss was increased because the Joys "represented that they had sprinklers" when they did not actually have anything other than a sprinkler system used to irrigate their yard. *Id.* at 1866. According to Aigeldinger, a fire is less likely in a home with sprinklers.

The district court admitted into evidence, over AmGuard's objection, AmGuard's internal procedure for verifying the presence of automatic sprinklers ("Automatic Sprinkler Cert/Photo"). The Automatic Sprinkler Cert/Photo procedure was required when an insured marked "yes" next to automatic sprinklers in the application. AmGuard's practice was to issue the policy and then request a certification or photograph if one was not already available in the file. AmGuard would set a reminder for 15 days later to check for a certification or photographs confirming the presence of automatic sprinklers. If no proof was provided within 15 days, AmGuard would send another notification and set a reminder for another 15 days. If AmGuard did not receive proof within 30 days, AmGuard would endorse the policy, changing the "yes" to "no." If a certification or photograph was received after the endorsement was changed, AmGuard would change the answer back to "yes" effective as of the date of receipt.

Aigeldinger testified that in the Joys' case, no one from AmGuard followed this procedure. AmGuard did not check to see if the home had automatic sprinklers or contact the Joys or the Lancaster Agency regarding the automatic sprinklers.

The jury returned a verdict in favor of the Joys and the Lancaster Agency. Specifically, the jury found that: (1) AmGuard breached the Policy by denying the Joys' claim; (2) Iva Joy made a misrepresentation when applying for coverage; (3) Iva Joy did not make the misrepresentation with an intent to deceive AmGuard; and (4) the Lancaster Agency did not cause any loss to AmGuard.

After trial, the district court found as a matter of law that Iva Joy's misrepresentation did not materially increase AmGuard's risk of loss. AmGuard's timely appeal followed.

**II.**

*AmGuard's Automatic Sprinkler Cert/Photo procedure*. AmGuard argues that the district court erred by admitting into evidence its internal Automatic Sprinkler Cert/Photo procedure. AmGuard contends that the procedure is irrelevant, unfairly prejudicial, and inadmissible parol evidence.

We review the "district court's evidentiary rulings for abuse of discretion, and [its] determination will be reversed only if the abuse of discretion caused more than harmless error." *Tompkin v. Philip Morris USA, Inc.*, 362 F.3d 882, 897 (6th Cir. 2004) (citations omitted). "A district court abuses its discretion when it relies on clearly erroneous findings of fact, when it improperly applies the law, or uses an erroneous legal standard." *Bisig v. Time Warner Cable, Inc.*, 940 F.3d 205, 218 (6th Cir. 2019) (quoting *Stough v. Mayville Cmty. Schs.*, 138 F.3d 612, 614 (6th Cir. 1998)). "Broad discretion is given to district courts in determinations of admissibility based on considerations of relevance and prejudice, and those decisions will not be lightly

overturned." *Tompkin*, 362 F.3d at 897 (quoting *United States v. Jackson-Randolph*, 282 F.3d 369, 376 (6th Cir. 2002)). "In reviewing the trial court's decision for an abuse of discretion, [we] must view the evidence in the light most favorable to its proponent, giving the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value." *Paschal v. Flagstar Bank*, 295 F.3d 565, 576 (6th Cir. 2002) (quoting *United States v. Schrock*, 855 F.2d 327, 333 (6th Cir. 1988)).

"Irrelevant evidence is not admissible." Fed. R. Evid. 402. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. However, relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice[.]" Fed. R. Evid. 403.

Prior to trial, the district court determined that the Automatic Sprinkler Cert/Photo procedure was relevant to the Joys' claims against AmGuard, a decision it reiterated at trial.[1] The district court did not abuse its discretion in doing so. AmGuard's Automatic Sprinkler Cert/Photo procedure was relevant to the Joys' claim that AmGuard breached the contract based on either waiver or estoppel, as well as their bad-faith claim. And it is relevant to the primary issue that AmGuard raises on appeal—whether Iva Joy's misrepresentation increased the risk of loss to AmGuard such that the policy was void at inception.

This brings us to the question of whether the district court abused its discretion when it declined to exclude the Automatic Sprinkler Cert/Photo procedure evidence under Rule 403. The Automatic Sprinkler Cert/Photo procedure "was subject to exclusion only if its probative value

---

[1] Although AmGuard challenged the procedure's relevance to its third-party claims in a motion in limine, AmGuard does not challenge the district court's finding on this ground on appeal. For this reason, we will not address the procedure's relevance to the third-party claims.

was '*substantially outweighed* by the danger of unfair prejudice.'" *Paschal*, 295 F.3d at 580 (emphasis added). Even if the evidence was unfairly prejudicial, we "giv[e] the evidence its maximum reasonable probative force," *id.*, and in doing so, we agree with the district court that the probative value of the evidence was not substantially outweighed by danger of unfair prejudice. The risk of unfair prejudice is "defined as the 'undue tendency to suggest a decision based on improper considerations.'" *United States v. Hazelwood*, 979 F.3d 398, 412 (6th Cir. 2020) (quoting *United States v. Asher*, 910 F.3d 854, 861 (6th Cir. 2018)). Although the Automatic Sprinkler Cert/Photo procedure likely prejudiced AmGuard, as most adverse evidence does, it did not do so unfairly.

The district court's reference to "unconscionable behavior" does not alter our conclusion. The court referenced "unconscionable behavior" as an exception to the parol-evidence rule, which "tie[d] into" the Joys' arguments for waiver, estoppel, and bad faith. R. 167, PageID 1900. Indeed, waiver and estoppel are both exceptions to the parol-evidence rule under Tennessee law, which further dispenses with AmGuard's argument that the Automatic Sprinkler Cert/Photo procedure was inadmissible parol evidence. *See, e.g.*, *Baird v. Fidelity-Phenix Fire Ins. Co.*, 162 S.W.2d 384, 389 (Tenn. 1942) (holding that waiver may be proven "by express declaration; or by acts and declarations manifesting an intent and purpose not to claim the supposed advantage; or by a course of acts and conduct, or by so neglecting and failing to act, as to induce a belief that it was his intention and purpose to waive"); *Stamp v. Honest Abe Log Homes, Inc.*, 804 S.W.2d 455, 457 (Tenn. Ct. App. 1990) (noting that "[t]he general rule is that parol evidence is not admissible to contradict, alter, or vary the terms of a written instrument, except upon grounds of estoppel" (citing *Myers v. Taylor*, 64 S.W. 719 (Tenn. 1901))).

Viewing the evidence in the light most favorable to the Joys, the probative value of the Automatic Sprinkler Cert/Photo procedure outweighs any prejudice to AmGuard. We therefore reject AmGuard's argument that the district court abused its discretion by admitting AmGuard's Automatic Sprinkler Cert/Photo procedure.

**III.**

*Did Iva Joy's misrepresentation increase AmGuard's risk of loss?* The district court did not err in finding that AmGuard failed to prove that Iva Joy's misrepresentation increased its risk of loss under the Policy. Tennessee law governs this issue. *See Baker Hughes Inc. v. S&S Chem., LLC*, 836 F.3d 554, 560 (6th Cir. 2016) (observing that we need not conduct a choice-of-law inquiry when there is no dispute on the applicable substantive law). Under Tenn. Code Ann. § 56-7-103:

> No written or oral misrepresentation or warranty made in the negotiations of a contract or policy of insurance, or in the application for contract or policy of insurance, by the insured or in the insured's behalf, shall be deemed material or defeat or void the policy or prevent its attaching, unless the misrepresentation or warranty is made with actual intent to deceive, or unless the matter represented increases the risk of loss.

AmGuard argues that Iva Joy's misrepresentation regarding having automatic sprinklers voided the Policy. To void an insurance policy under Tenn. Code Ann. § 56-7-103, an insurer must prove two things. First, the insurer must prove that the insured made a misrepresentation in the insurance application. *Womack v. Blue Cross & Blue Shield of Tenn.*, 593 S.W.2d 294, 295 (Tenn. 1980). Second, the insurer must prove that the insured made the misrepresentation with an intent to deceive the insurer or that the misrepresentation "materially increased the risk of loss." *Id.* "The issues of whether a misrepresentation exists and whether false answers were given with 'intent to deceive,' are questions of fact to be determined by the fact-finder." *Howell v. Colonial*

*Penn Ins. Co.*, 842 F.2d 821, 823 (6th Cir. 1987) (citing *Womack*, 593 S.W.2d at 295). "Once it is determined that a misrepresentation exists, it is a question of law, not fact, for the court as to whether the misrepresentation increased the risk of loss." *Id.* (citing *Womack*, 593 S.W.2d at 295; *Johnson v. State Farm Life Ins. Co.*, 633 S.W.2d 484, 487–88 (Tenn. Ct. App. 1981)).

The jury found that Iva Joy made a misrepresentation regarding the presence of automatic sprinklers in the Joys' home in the Proposal of Insurance, and further found that AmGuard failed to prove that Iva Joy made the misrepresentation with intent to deceive. The parties do not challenge these findings on appeal. We review the district court's answer to the question of whether Iva Joy's misrepresentation increased the risk of loss to AmGuard de novo. *See Consumers' Rsch. v. FCC*, 67 F.4th 773, 783 (6th Cir. 2023).

Under Tennessee law, "[a]ny misrepresentation which naturally and reasonably influences the judgment of the insurer in making the contract is a misrepresentation that 'increases the risk of loss' within the meaning of the statute." *Broyles v. Ford Life Ins. Co.*, 594 S.W.2d 691, 693 (Tenn. 1980) (quoting *Little v. Washington Nat'l Ins. Co.*, 241 S.W.2d 838, 840 (Tenn. Ct. App. 1951)). Courts "may use the questions an insurance company asks on its application to determine the types of conditions or circumstances that the insurance company considers relevant to its risk of loss." *Freeze v. Tenn. Farmers Mut. Ins. Co.*, 527 S.W.3d 227, 232 (Tenn. Ct. App. 2017) (citing *Johnson*, 633 S.W.2d at 487). Additionally, "courts frequently rely on the testimony of insurance company representatives to establish how truthful answers by the proposed insured would have affected the amount of the premium or the company's decision to issue the policy." *Lane v. Am. Gen. Life and Acc. Ins. Co.*, 252 S.W.3d 289, 296 (Tenn. Ct. App. 2007) (citing *Bagwell v. Canal Ins. Co.*, 663 F.2d 710, 712 (6th Cir. 1981)); *Vermont Mut. Ins. Co. v. Chiu*, 21 S.W.3d 232, 237

(Tenn. Ct. App. 2000)). Even so, we have stated that when determining whether a misrepresentation naturally and reasonably influenced an insurer's judgment:

> The bare, post hoc assertions of the insurer's agents, employees, or officers to this effect will not suffice. Instead, the insurer must demonstrate, by actuarial evidence or otherwise, that the falsehood in controversy caused it to take on either a greater risk of loss than it had bargained for, or a risk that it would not have assumed under any circumstances.

*Ky. Cent. Life Ins. Co. v. Jones*, 7 F.3d 233, 1993 WL 328028, at \*9 (6th Cir. Aug. 27, 1993) (unpublished table decision).

Courts may also take a common-sense approach to determining whether a misrepresentation would naturally and reasonably influence an insurer's judgment, though common sense is generally considered alongside the previously mentioned factors. *See Chiu*, 21 S.W.3d at 237; *Smith v. Tenn. Farmers Life Reassurance Co.*, 210 S.W.3d 584, 591 (Tenn. Ct. App. 2006). "A finding that the insurer would not have issued the policy had the truth been disclosed is unnecessary; a showing that the insurer was denied information that it, in good faith, sought and deemed necessary to an honest appraisal of insurability is sufficient to establish the grounds for an increased risk of loss." *Smith*, 210 S.W.3d at 590 (citations omitted). And it is the misrepresentation, not the increase in the insurer's risk of loss, that must be material. *See id.* at 590–91.

At first glance, these factors appear to favor AmGuard. That the Proposal of Insurance asked about automatic sprinklers suggests AmGuard considered the presence of automatic sprinklers relevant to its risk of loss and its "honest appraisal of insurability." *Howell*, 842 F.2d at 824. Aigeldinger's testimony that AmGuard's risk of loss due to a fire was higher without sprinklers and that the Joys would not have received a premium discount also suggests that Iva Joy's misrepresentation increased the risk of loss. Although AmGuard argues that the district court

"discounted" Aigeldinger's testimony as "not 'add[ing] much,' noting that she did not present 'actuarial evidence,'" D. 47 at p. 32 (quoting R. 163, PageID 1604), we agree with the district court that Aigeldinger's testimony about the risk of loss was not actuarial evidence and, taking a common-sense approach, we agree the risk of fire would probably be lower in a home with automatic sprinklers than in one without them. *See, e.g.*, *Smith*, 210 S.W.3d at 591; *Chiu*, 21 S.W.3d at 237.

According to AmGuard, our analysis should stop there. But, as the Tennessee Supreme Court has held, "the practice of an insurance company with respect to particular information may be looked to in determining whether it would have naturally and reasonably influenced the judgment of the insurer[.]" *Broyles*, 594 S.W.2d at 693 (quoting *Volunteer State Life Ins. Co. v. Richardson*, 244 S.W. 44, 49 (Tenn. 1922)). And "no sound principle of law would permit a determination of this question merely upon the say so of the company after the [loss] has occurred." *Id.* (quoting *Richardson*, 244 S.W. at 49). We therefore also consider the impact of the Automatic Sprinkler Cert/Photo procedure and Aigeldinger's testimony regarding AmGuard's failure to follow the procedure, which leads us to conclude that the presence of automatic sprinklers was not necessary to AmGuard's "honest appraisal of insurability."

According to Aigeldinger, the Automatic Sprinkler Cert/Photo procedure, which she described as an "aspirational process," is not shared with insureds or agents, and therefore "has no bearing on the conditions of the policy at all." R. 167, PageID 1868, 1876. However, the procedure clearly states that it was "required" if the Proposal of Insurance listed automatic sprinklers as a "yes," in which case AmGuard would issue the policy and request a certification or photograph of the sprinklers to verify the insured's answer. R. 57-5, PageID 618; R. 167, PageID 1877. If AmGuard did not receive the certification or photograph within 30 days, AmGuard would

remove the endorsement to change the answer from "yes" to "no." If a certification or photograph was received after the endorsement was changed, AmGuard would change the answer back to "yes" effective as of the date of receipt.

There is no dispute that the Proposal of Insurance indicated that the Joys had automatic sprinklers. Aigeldinger testified that this *required* procedure was not followed for several of AmGuard's insureds, including the Joys. For four policies listing automatic-sprinkler discounts, AmGuard only followed up on one to confirm the presence of sprinklers. Aigeldinger failed to explain why AmGuard did not follow its procedure for some of its insureds and she admitted that AmGuard followed other procedures to provide discounts to the Joys, including verifying whether the Joys had an in-force personal auto policy with the Lancaster Agency.

As Aigeldinger testified, if AmGuard had learned there were no sprinklers, the policy would have remained in effect, but without the sprinkler endorsement and premium discount. Had Iva Joy's answers in the Proposal of Insurance been the end of the story, we may have agreed with AmGuard that the misrepresentation increased its risk of loss, even if it only affected the premium amount—a difference of about $200. But here, AmGuard could have verified the presence of automatic sprinklers and failed to do so. And even if AmGuard had verified that the Joys did not have automatic sprinklers, it would have simply changed Iva Joy's answer from "yes" to "no." That makes this case different from *Chiu*, which AmGuard relies on heavily, where the court noted that even though the insurer "could have taken additional measures to make a[n] 'honest appraisal of insurability[,]'" the plaintiff's misrepresentations denied the insurer the opportunity to inspect, causing an increased risk of loss. 21 S.W.3d at 237. It is also different from *Tennessee Farmers Mutual Insurance Co. v. Farrar*, where the Tennessee Court of Appeals held that because a "life estate was not disclosed, the Company never had *an opportunity* to ask [the insured] questions so

it might evaluate the risk associated with the dual ownership interests[.]" 337 S.W.3d 829, 836 (Tenn. Ct. App. 2009) (emphasis in original). AmGuard had the opportunity to obtain information about whether the Joys had automatic sprinklers. And even if AmGuard had taken advantage of that opportunity, it would not have affected AmGuard's view of the Joys' insurability. AmGuard simply would have changed Iva Joy's answer and removed the automatic-sprinkler endorsement.

We recognize that courts applying Tenn. Code Ann. § 56-7-103 generally have been more likely to find that a misrepresentation increased the risk of loss. This is true even in at least one case where the misrepresentation affected only the insurance premium. *See, e.g.*, *Jones*, 7 F.3d 233, 1993 WL 328028, at *9–10. However, none of those cases involve this situation where the insurer failed to follow its own procedure to obtain the very information it sought on the insurance application. Based on these facts, we find that AmGuard's failure to follow its own procedure suggests that the presence of automatic sprinklers was not something that "naturally and reasonably influence[d]" AmGuard's judgment about the Joys' insurability. *See Broyles*, 594 S.W.2d at 693; *see also Howell*, 842 F.2d at 824. Aigeldinger's "bare, post hoc assertions" to the contrary without "actuarial evidence or otherwise" were insufficient to sustain AmGuard's burden. *See Jones*, 7 F.3d 233, 1993 WL 328028, at *9.

**IV.**

*The Joys' breach of contract and bad-faith claims*. AmGuard challenges the jury's verdict finding AmGuard liable for breach of contract and bad faith.[2] According to the district court, "the jury found that AmGuard had breached the policy, either because it waived the policy condition on sprinklers or because as [a] matter of equity AmGuard should not be permitted to escape

---

[2] AmGuard also challenges the district court's finding on negligence, but as AmGuard points out on appeal, no party sued under a negligence theory.

liability due to the mistake or negligence of its agent." R. 163, PageID 1609. At the close of the Joys' proof, AmGuard moved for judgment as a matter of law under Federal Rule of Civil Procedure 50(a) on the breach-of-contract and bad-faith claims, which the district court took under advisement. Post-verdict, AmGuard filed a renewed motion for judgment as a matter of law under Rule 50(b), which summarily argued that AmGuard was entitled to judgment as a matter of law on "all of Plaintiffs' claims under Tenn. Code Ann. § 56-7-103," R. 156, PageID 1491, but focused primarily on whether Iva Joy's misrepresentation increased the risk of loss to AmGuard. Regarding the Joys' breach-of-contract claim, the district court opined that a grant of judgment as a matter of law to AmGuard would be inconsistent with the jury's verdict, noting that "[t]he Joys only prevailed because the jury determined that other equitable grounds existed to waive or estop the enforcement of the policy as written." R. 163, PageID 1609. Because the parties did not "fully develop[] this issue in their briefing, . . . the [c]ourt [found] it unnecessary to address it further as part of its consideration of the Rule 50(b) Motion." *Id.* at 1609–10.

AmGuard now argues that there was insufficient evidence of bad faith, estoppel, or waiver to prove breach of contract and, as a result, AmGuard claims the district court erred in denying its motion for judgment as a matter of law under Rule 50(a). The Joys and the Lancaster Agency argue that AmGuard's challenge is unreviewable because AmGuard did not raise a sufficiency-of-the-evidence challenge to the jury's verdict in its Rule 50(b) motion.

AmGuard's challenge to the sufficiency of the evidence is unreviewable. Rule 50 "sets forth the procedural requirements for challenging the sufficiency of the evidence in a civil jury trial and establishes two stages for such challenges—prior to submission of the case to the jury, and after the verdict and entry of judgment." *Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*, 546 U.S. 394, 399 (2006). And "[i]f a party fails to make a renewed motion for judgment as a matter

of law after a jury verdict, 'an appellate court is "powerless" to review the sufficiency of the evidence after trial.'" *Hanover Am. Ins. Co. v. Tattooed Millionaire Ent., LLC*, 974 F.3d 767, 779 (6th Cir. 2020) (quoting *Ortiz v. Jordan*, 562 U.S. 180, 189 (2011)). Although AmGuard renewed its motion for judgment as a matter of law after the jury verdict, it did so only on the ground that Iva Joy's misrepresentation increased the risk of loss to AmGuard. AmGuard did not challenge the sufficiency of the evidence, and as a result, AmGuard has forfeited this argument.

## V.

*AmGuard's third-party claim.* AmGuard argues that the jury's verdict in favor of the Lancaster Agency is logically inconsistent, again challenging the sufficiency of the evidence supporting the jury's finding that the Lancaster Agency did not breach its Agency Agreement with AmGuard. But AmGuard did not preserve this argument in its Rule 50(b) motion. As a result, it is forfeited. *See Unitherm*, 546 U.S. at 404 ("[A] party is not entitled to pursue a new trial on appeal unless that party makes an appropriate post-verdict motion in the district court.").

## VI.

For these reasons, we **AFFIRM** the judgment of the district court.