**Neva June SMITH**

v.

**TENNESSEE FARMERS LIFE REASSURANCE COMPANY et al.**

Court of Appeals of Tennessee, at Nashville.

Nov. 18, 2005 Session.

June 14, 2006.

Permission to Appeal Denied by Supreme Court Nov. 13, 2006.

Robert B. Littleton and David L. Johnson, Nashville, Tennessee, for the appellant, Tennessee Farmers Life Reassurance Company.

Clinton H. Swafford, Winchester, Tennessee, for the appellee, Neva June Smith.

## OPINION

WILLIAM C. KOCH, Jr., P.J., M.S., delivered the opinion of the court, in which WILLIAM B. CAIN and FRANK G. CLEMENT, Jr., JJ., joined.

This appeal involves a dispute between an insurance company and the widow of a deceased policyholder. Following the policyholder's death, the insurance company declined to honor the policy because it had ascertained that the policyholder's application for insurance contained misrepresentations regarding matters that, if known, would have affected its decision to issue the policy. The policyholder's widow filed suit in the Chancery Court for Franklin County to force the company to honor the policy. Following a bench trial, the trial court found that the policyholder had made misrepresentations on his application but that these misrepresentations did not increase the insurance company's risk of loss. Accordingly, the trial court ordered

the insurance company to pay the policyholder's widow and estate $115,000. The insurance company has appealed. We have determined that the evidence does not support the trial court's conclusion that the policyholder's misrepresentations did not increase the insurance company's risk of loss.

## I.

John Wayne Smith and Neva June Smith operated a chicken farm in Decherd, Tennessee for many years. In 1993, when Mr. Smith was approximately 52 years old, they decided to purchase insurance on Mr. Smith's life as a hedge against their business debt. They discussed this insurance with an agent of Tennessee Farmers Life Reassurance Company (Tennessee Farmers). After Tennessee Farmers informed them that it was unable to offer the type of insurance the Smiths were looking for, they purchased a life insurance policy from another company.

In 1999 John Spence, a Tennessee Farmers agent, contacted the Smiths to tell them that he could provide them with similar insurance coverage at a lower premium. The Smiths decided to replace their existing insurance policy with a Tennessee Farmers policy. On June 1, 1999, Mr. Spence filled out and Mr. Smith signed an application for a ten year level term life insurance policy.[1]

During the required medical examination on August 7, 1999, the examining nurse asked Mr. Smith questions and recorded his answers on a form that Mr.

Smith later signed. Among the questions Mr. Smith was asked were "Have you ever [b]een arrested and/or treated for any alcohol or drug related problems?" and "In the past 2 years have you ... had a [driver's] license revoked or suspended ... ?" Mr. Smith answered "no" to each of these questions, even though his driver's license had been suspended in 1998 as a result of a DUI conviction. Based on Mr. Smith's application and medical examination, Tennessee Farmers issued Mr. Smith a $115,000 life insurance policy with a "preferred rating" that became effective on August 9, 1999.

Mr. Smith died from a heart attack on June 12, 2001, and thereafter, Ms. Smith filed a claim with Tennessee Farmers. Because Mr. Smith's death occurred within two years of the effective date of his life insurance policy, Tennessee Farmers opened an investigation into Ms. Smith's claim.[2] Tennessee Farmers reviewed Mr. Smith's medical records and also interviewed Ms. Smith. The investigation revealed that Mr. Smith had not been truthful in his answers during the medical examination on August 7, 1999.

Tennessee Farmers informed Ms. Smith of the results of its investigation in a letter dated August 17, 2001. The company explained:

> Based on information provided by you, we obtained copies of his [Mr. Smith's] medical records from Dr. Karen Tidmore, Dr. Nicholas Petrochko, Dr. Dewey Hood, and Southern Tennessee

---

1. Mr. Spence made several errors when he filled out the application. He failed to note that the policy being purchased would replace an existing insurance policy, and he erroneously noted that Mr. Smith had Tennessee Farmers automobile insurance. There is no evidence that these oversights affected the Smiths' decision to purchase the insurance policy at issue in this case.

2. The policy contained a two-year "Incontestable Clause," after which Tennessee Farmers would be contractually prevented from contesting payment of most claims. Tennessee Farmers customarily investigates all claims that occur within the contestable time frame.

Medical Center. These records provide details of some significant medical problems that your husband did not reveal to us.

According to medical records received from Dr. Karen A. Tidmore your husband had been diagnosed with chronic obstructive pulmonary disease and peptic ulcer disease. The records from Southern Tennessee Medical Center also contain details of his being treated for peptic ulcer disease and possible bleeding ulcer. These records also state that he was drinking 2 quarts of beer per day. Dr. Tidmore also had made note of alcohol use several times. In the statement given by you, you said that he had been arrested for driving under the influence. According to information we have received, this occurred in 1998.

If we had been aware of his arrest for DUI, we would have automatically applied a substandard rating on his policy, which would have been an extra charge of $3.50 per thousand dollars of insurance for 2 years. Additionally, if we had been aware of his peptic ulcer disease, significant alcohol use, and chronic obstructive pulmonary disease, we would have ordered additional medical information. The best offer we could have made would have been a very high substandard rate, which would have required a substantial increase in his premium. For his policy to have then become in effect he would have had to accept our counteroffer and paid the higher premium. It is very likely, with additional medical information, we would not have been able to insure your husband at all.

Accordingly, Tennessee Farmers informed Ms. Smith that it was contesting her claim but that it would return the $1,774.52 in premiums that had been paid on the policy.

On September 30, 2002, Ms. Smith, as beneficiary of the policy and representative of Mr. Smith's estate, filed suit against Tennessee Farmers in the Chancery Court for Franklin County seeking to recover $115,000 in insurance benefits. Tennessee Farmers defended on the ground that it had a right to deny the claim under Tenn. Code Ann. § 56–7–103 (2000) because Mr. Smith had made misrepresentations that had increased its risk of loss. Following a bench trial, the trial court found that Mr. Smith had, in fact, made misrepresentations in his application materials. However, the trial court also concluded that these misrepresentations had not increased Tennessee Farmers' risk of loss and, therefore, that Ms. Smith was entitled to recover $115,000 in benefits available under the policy. Tennessee Farmers has appealed.

## II.

■ The standards this court uses to review the results of bench trials are well-settled. With regard to a trial court's findings of fact, we will review the record de novo and will presume that the findings of fact are correct "unless the preponderance of the evidence is otherwise." We will also give great weight to a trial court's factual findings that rest on determinations of credibility. *In re Estate of Walton,* 950 S.W.2d 956, 959 (Tenn.1997); *B & G Constr., Inc. v. Polk,* 37 S.W.3d 462, 465 (Tenn.Ct.App.2000). If, however, the trial court has not made a specific finding of fact on a particular matter, we will review the record to determine where the preponderance of the evidence lies without employing a presumption of correctness. *Ganzevoort v. Russell,* 949 S.W.2d 293, 296 (Tenn.1997).

■ Reviewing findings of fact under Tenn. R.App. P. 13(d) requires an appellate court to weigh the evidence to determine in which party's favor the weight of

the aggregated evidence falls. There is a "reasonable probability" that a proposition is true when there is more evidence in its favor than there is against it. Thus, the prevailing party is the one in whose favor the evidentiary scale tips, no matter how slightly. *Parks Props. v. Maury County,* 70 S.W.3d 735, 741 (Tenn.Ct.App.2001); *Realty Shop, Inc. v. RR Westminster Holding, Inc.,* 7 S.W.3d 581, 596 (Tenn.Ct. App.1999).

◼ Tenn. R.App. P. 13(d)'s presumption of correctness requires appellate courts to defer to a trial court's findings of fact. *Fell v. Rambo,* 36 S.W.3d 837, 846 (Tenn.Ct.App.2000). Because of the presumption, an appellate court is bound to leave a trial court's finding of fact undisturbed unless it determines that the aggregate weight of the evidence demonstrates that a finding of fact other than the one found by the trial court is more probably true. *Parks Props. v. Maury County,* 70 S.W.3d at 742. Thus, for the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect. *Walker v. Sidney Gilreath & Assocs.,* 40 S.W.3d 66, 71 (Tenn.Ct.App.2000).

◼ The presumption of correctness in Tenn. R.App. P. 13(d) applies only to findings of fact, not to conclusions of law. Accordingly, appellate courts review a trial court's resolution of legal issues without a presumption of correctness and reach their own independent conclusions regarding these issues. *Johnson v. Johnson,* 37 S.W.3d 892, 894 (Tenn.2001); *Nutt v. Champion Int'l Corp.,* 980 S.W.2d 365, 367 (Tenn.1998); *Knox County Educ. Ass'n v. Knox County Bd. of Educ.,* 60 S.W.3d 65,

71 (Tenn.Ct.App.2001); *Placencia v. Placencia,* 48 S.W.3d 732, 734 (Tenn.Ct.App. 2000).

◼ Tenn.Code Ann. § 56–7–103 authorizes an insurance company to deny a claim for benefits in two circumstances—if the insured made intentional misrepresentations on the application for insurance or if the insured made misrepresentations that increased the insurer's risk of loss. In the context of a bench trial, determining whether an insured intentionally misrepresented information is a question of fact. *Womack v. Blue Cross and Blue Shield of Tenn.,* 593 S.W.2d 294, 295 (Tenn.1980); *State Farm Gen. Ins. Co. v. Wood,* 1 S.W.3d 658, 661 n. 5 (Tenn.Ct. App.1999). However, determining whether a particular misrepresentation increases an insurance company's risk of loss is a question of law for the court. *Broyles v. Ford Life Ins. Co.,* 594 S.W.2d 691, 693 (Tenn.1980); *Vermont Mut. Ins. Co. v. Chiu,* 21 S.W.3d 232, 235 (Tenn.Ct.App. 2000). Therefore, the former determinations are entitled to a presumption of correctness on appeal but not the latter.

◼ The trial court stopped short of finding that Mr. Smith's misrepresentations and omissions were intentional.[3] Instead, it based its decision on its conclusion that Mr. Smith's misrepresentations did not increase Tennessee Farmers' risk of loss. Therefore, in accordance with Tenn. R.App. P. 13(d), we must review the record de novo without affording the trial court's conclusion a presumption of correctness.

### III.

As we begin our legal analysis, we are not unmindful of the unfortunate circum-

---

**3.** The trial court speculated that Mr. Smith could have been confused by the questions which asked about arrests for alcohol related problems but not specifically about arrests for driving while intoxicated or which asked about suspended or revoked driver's licenses rather than restricted licenses such as the one that Mr. Smith was issued following his DUI conviction.

stances presented in this case. It is not lost on us that Mr. Smith already had life insurance that was not contestable and that the policy at issue in this case replaced that insurance. We also understand that Mr. Smith's death occurred less than two months before the policy at issue in this case would have become uncontestable. These circumstances, however, cannot color the application of the law to the facts of this case.

### A.

Tenn.Code Ann. § 56–7–103 authorizes an insurance company to deny a claim if the insured obtains the policy after misrepresenting a matter that increased the company's risk of loss. A misrepresentation in an application for insurance increases the insurance company's risk of loss if it naturally and reasonably influences the judgment of the insurer in making the contract. *Vermont Mut. Ins. Co. v. Chiu,* 21 S.W.3d at 235; *Sine v. Tennessee Farmers Mut. Ins. Co.,* 861 S.W.2d 838, 839 (Tenn.Ct.App.1993); *Seaton v. National Grange Mut. Ins. Co.,* 732 S.W.2d 288, 288–89 (Tenn.Ct.App.1987). It need not involve a hazard that actually produced the loss in question. *Loyd v. Farmers Mut. Fire Ins. Co.,* 838 S.W.2d 542, 545 (Tenn.Ct.App.1992).

The courts may use the questions an insurance company asks on its application to determine the types of conditions or circumstances that the insurance company considers relevant to its risk of loss. *Johnson v. State Farm Life Ins. Co.,* 633 S.W.2d 484, 487 (Tenn.Ct.App.1981). Additionally, the courts frequently rely on

the testimony of insurance company representatives to establish how truthful answers by the proposed insured would have affected the amount of the premium or the company's decision to issue the policy. *See, e.g., Bagwell v. Canal Ins. Co.,* 663 F.2d 710, 712 (6th Cir.1981); *Vermont Mut. Ins. Co. v. Chiu,* 21 S.W.3d at 235. A finding that the insurer would not have issued the policy had the truth been disclosed is unnecessary; a showing that the insurer was denied information that it, in good faith, sought and deemed necessary to an honest appraisal of insurability is sufficient to establish the grounds for an increased risk of loss. *Vermont Mut. Ins. Co. v. Chiu,* 21 S.W.3d at 235; *Loyd v. Farmers Mut. Fire Ins. Co.,* 838 S.W.2d at 545.

### B.

The trial court's findings reflect that its decision was incorrectly based on whether Mr. Smith's misrepresentations were "sufficient to materially increase the risk of loss to the insurance carrier." [4] While other courts have used the "materially increase the risk of loss" phrasing,[5] Tenn.Code Ann. § 56–7–103 does not require a "material" increase in the risk of loss before an insurance claim can be rejected. It is the misrepresentation that must be material, and the statute clearly states that a misrepresentation will not be deemed material unless it increases the risk of loss to the insurer. Therefore, the correct inquiry in cases involving Tenn. Code Ann. § 56–7–103 is simply whether

---

**4.** The trial court stated: "So it boils down to whether his [Mr. Smith's] failure to disclose his D.U.I. in Marion County would be sufficient to materially increase the risk of loss to the insurance carrier such as would void this policy and require me then to grant judgment

for the insurance carrier in this particular case."

**5.** *See, e.g., Seaton v. National Grange Mut. Ins. Co.,* 732 S.W.2d at 288; *Sloop v. Mut. of Omaha Ins. Co.,* 55 Tenn.App. 656, 663–64, 404 S.W.2d 265, 268 (1965).

the misrepresentation increased the insurance company's risk of loss.

■ One of Tennessee Farmers' underwriters testified that Mr. Smith's truthful disclosure of his DUI conviction, by itself, would have resulted in an increased premium.[6] The underwriter also testified that the DUI conviction, in combination with Mr. Smith's medical conditions, could very well have caused the company to decline to insure him. The underwriter alluded to the fact that persons with DUI convictions have a higher risk of death, especially deaths caused by automobile accidents. This conclusion is, as we phrased it in *Vermont Mut. Ins. Co. v. Chiu*, 21 S.W.3d at 237, a matter of common sense.

Thus, based on our de novo review of the evidence, we find that the record contains sufficient evidence to support a conclusion that the disclosure of Mr. Smith's DUI conviction would have naturally and reasonably influenced Tennessee Farmers' decision regarding the issuance of his life insurance policy. It follows that Mr. Smith's failure to disclose his DUI conviction is a misrepresentation that increased Tennessee Farmers' risk of loss for the purpose of Tenn.Code Ann. § 56–7–103 and, therefore, that Tennessee Farmers was well within its statutory rights to decline to pay benefits under the policy to Ms. Smith.

## IV.

■ Ms. Smith seeks to buffer the effect of Tenn.Code Ann. § 56–7–103 on her claim by pointing out that neither she nor Mr. Smith read the applications or other forms connected to the application for Mr. Smith's insurance policy before they signed them.[7] We have addressed the "but I didn't read it" defense many times before, and the law in Tennessee on this issue has been long settled. The failure to read an application for insurance does not insulate an applicant from errors or omissions in a signed application. A party's signature binds him or her as matter of law to the representations in the signed document. *Beasley v. Metropolitan Life Ins. Co.*, 190 Tenn. 227, 232, 229 S.W.2d 146, 148 (1950). *Giles v. Allstate Ins. Co., Inc.*, 871 S.W.2d 154, 156 (Tenn. Ct.App.1993); *Montgomery v. Reserve Life Ins.*, 585 S.W.2d 620, 622 (Tenn.App. 1979).

## V.

We reverse the judgment and remand the case to the trial court with directions

6. Ms. Smith notes correctly that, according to the same Tennessee Farmers policies discussed by the underwriter, Mr. Smith's life insurance policy should have had a higher rate due to the fact that he was an admitted smoker. This fact is irrelevant, however, to the question of whether Mr. Smith's omission resulted in a higher risk of loss to the insurer. Ms. Smith is not entitled to rely on the possibility that Tennessee Farmers might have mistakenly issued a standard rate policy even if it had known of the DUI, and such a mistake would not be evidence that the insurer did not consider the issue in question to increase its risk of loss.

7. Ms. Smith has never claimed that Mr. Smith answered the questions fully and truthfully and that Mr. Spence or the nurse recorded his answers incorrectly. Even if she had, Tenn.Code Ann. § 56–7–103 would still have applied as long as Mr. Smith thereafter signed the application filled out by the agent. *McPherson v. Fortis Ins. Co.*, No. M2003–00485–COA–R3–CV, 2004 WL 1123529, at *4–7 (Tenn. Ct.App. Jan 12, 2004) (No Tenn. R.App. P. 11 application filed). However, the outcome could have been different had Mr. Smith signed a blank application that was later filled out by the insurance agent. *Bland v. Allstate Ins. Co.*, 944 S.W.2d 372, 375–78 (Tenn.Ct.App.1996); *Berryhill v. Mut. Benefit Health and Accident Ass'n*, 37 Tenn.App. 303, 306–07, 262 S.W.2d 878, 879–80 (1953).

to enter a judgment in favor of Tennessee Farmers Life Reassurance Company and for whatever further proceedings consistent with this opinion may be required. We tax the costs of this appeal to Neva June Smith for which execution, if necessary, may issue.