IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
October 23, 2007 Session

**PAMELA LANE v. AMERICAN GENERAL LIFE
AND ACCIDENT INSURANCE COMPANY**

**Appeal from the Chancery Court for Knox County**
**No. 163924-3    Michael W. Moyers, Chancellor**

**No. E2006-02530-COA-R3-CV - FILED NOVEMBER 14, 2007**

In 2002, Ronnie Lane applied for and was issued a life insurance policy through American General Life and Accident Insurance Company ("American General"). Less than two years later, Mr. Lane died from a massive heart attack. Mr. Lane's wife, Pamela Lane, made a claim for the life insurance benefits. American General denied the claim, asserting that Mr. Lane had made material misrepresentations on the application for life insurance which increased the insurance company's risk of loss. The Trial Court agreed and granted American General's motion for summary judgment. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the
Chancery Court Affirmed; Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., joined, and CHARLES D. SUSANO, JR., J., filed a separate concurring opinion.

Christopher D. Heagerty, Knoxville, Tennessee, for the Appellant, Pamela Lane, as wife and next of kin of Ronnie W. Lane.

Michael S. Kelley and Matthew M. Scoggins, III, Knoxville, Tennessee, for the Appellee, American General Life and Accident Insurance Company.

**OPINION**

**Background**

In October of 2002, Mr. Lane applied for and was issued a $100,000 life insurance policy through American General. Less than two years later, on July 20, 2004, Mr. Lane died from a massive heart attack. Eight discharge diagnoses were listed on Mr. Lane's discharge and death summary, including possible chronic obstructive pulmonary disease. After his death, Mr. Lane's wife, plaintiff Pamela Lane ("Wife"), filed a claim for payment pursuant to the life insurance policy. American General asserted that Mr. Lane had made material misrepresentations on his application, and it denied the claim.

Wife filed this lawsuit in April of 2005, seeking payment pursuant to the policy. Wife also claimed that American General's denial of her claim was in bad faith, thereby entitling her to damages pursuant to Tenn. Code Ann. § 56-7-105.[1]

American General answered the complaint and denied that Wife was entitled to any payment on the insurance policy and further denied acting in bad faith. According to American General:

> Defendant affirmatively avers that its failure to pay Plaintiff any benefits under the Policy is based upon material misrepresentations and omissions regarding health matters by [the decedent] in connection with his application for insurance, including material information regarding diagnosis, treatment, hospitalization, and related matters at Fort Sanders Regional Medical Center from September 23, 2002, through September 24, 2002.

American General filed a motion for summary judgment claiming that the undisputed material facts showed that the application signed by Mr. Lane contained inaccurate information to the extent that it was justified in denying the claim for benefits. According to the motion, Mr. Lane certified on the insurance policy that "[a]ll statements and answers in this application are complete and true to the best of my knowledge and belief." The application also contained an authorization allowing American General to obtain any and all of the applicant's medical records. There are several particular responses in the application for insurance upon which American General based its misrepresentation defense. Question number 25 and Mr. Lane's response to that question are as follows:

> 25. Within the past 10 years, has any proposed insured been diagnosed as having or been treated for:

---

[1] Wife also made a claim pursuant to the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101, *et seq*. Wife has not pursued that claim in this appeal.

* * *

        f. asthma, emphysema, bronchitis, shortness of breath or any other disorder of the lungs or respiratory system?

        g. chest pains, angina, anemia or any other disease or disorder of the heart, blood or blood vessels?

Mr. Lane responded "No" to these two subparts of Question 25.

The next question was whether the applicant had consulted with a doctor or been treated at a hospital, clinic or treatment facility within the past five years. If so, the applicant was to list the doctor(s), hospital(s), etc. Mr. Lane stated only that he had been treated by various physicians for a herniated disc and that he had been treated by a physician for "regular checkups" and monitoring of blood pressure.

As part of the process for obtaining life insurance through American General, Mr. Lane also was examined by Paulette Linder ("Linder"), a nurse. Mr. Lane's responses during the examination conducted by Linder were essentially the same as those on his application. Mr. Lane denied having any shortness of breath, bronchitis, asthma, chronic respiratory disorder, chest pain, heart attack, or any disorder of the blood vessels. Again, Mr. Lane identified only the physicians that had treated him for the herniated disc and high blood pressure. Mr. Lane also denied having undergone an x-ray, an electrocardiogram, or any sort of diagnostic test within the past five years.

As it turns out, Mr. Lane had been treated at the Fort Sanders Regional Medical Center emergency room and at the Knoxville Heart Group less than one month before his filling out the application for life insurance and undergoing the medical examination by Linder. Mr. Lane was treated by Dr. Joseph S. Smith, III, at the Knoxville Heart Group. Mr. Lane was referred to Dr. Smith after he was treated in the emergency room. When Mr. Lane went to the emergency room, he was complaining primarily of right shoulder and back pain. Mr. Lane also may have complained of chest pain although that was not his primary complaint.[2] Mr. Lane was referred to Dr. Smith for a stress test which included an electrocardiogram ("EKG"). Dr. Smith testified by deposition that, within a reasonable degree of medical certainty, the results of the EKG and stress test revealed that the decedent had had a small heart attack that resulted in some permanent damage to the heart. None of this information was made known to American General or Linder even though it took place less than one month before Mr. Lane's application for life insurance was prepared.

Along with the motion for summary judgment, American General filed the affidavit of Janie Binkley ("Binkley"), its director of underwriting. According to this affidavit:

---

[2] The ER records are altogether unclear as to whether complaints of chest pain were a primary or secondary complaint, or whether the decedent even made any complaint of chest pain. At times the records indicate that there were no complaints of chest pain, and at other times they state that the primary diagnosis was "chest pain".

Depending upon certain factors, such as the product applied for, the age of the applicant and amount of insurance requested, an applicant's answer to a particular question or the applicant identifying a particular health condition and/or the identity of a health care provider, the applicant may be interviewed and physically examined by a trained nurse or other qualified medical examiner, who is an independent contractor and not employed by American General.…

In addition, based upon the identification of doctors, hospitals, and other healthcare providers in the application, American General may obtain an attending physician's statement or other information from the medical records of the applicant directly from the provider. Through the application, American General seeks to discover pertinent information, including health information, such as the applicant's history in connection with his/her respiratory system and cardiovascular system. Such information from the applicant allows American General to make an informed appraisal of the insurability of the applicant. Unless all providers are truthfully and accurately identified on the application, American General cannot obtain these medical records.…

Prior to this action being filed, American General received a claim for life insurance benefits from the plaintiff, Pamela Lane, on the life of her deceased husband Ronnie Lane.…

Because Ronnie Lane died within the two-year contestability period listed in the Policy, American General's Claim Department conducted a routine contestable investigation. In connection with that investigation, American General obtained certain medical records from the Emergency Department at Fort Sanders Medical Center … including a visit to the ER on … 9/23/02 (including a primary diagnosis as "Chest pain") and an x-ray taken that day showing COPD ("Chronic Obstructive Pulmonary Disease").[3]

In addition, during the pendency of this action, counsel for American General obtained copies of a Treadmill Thallium Test conducted on September 30, 2002, by Dr. Joseph S. Smith, III, of the Knoxville Heart Group.…

The names of the providers (Fort Sanders Medical Center, Dr. Seeley (ER doctor), and Dr. Joseph Smith), the specific visits on

---

[3] The decedent smoked approximately one pack of cigarettes per day.

9/23/02 and 9/30/02, and the tests performed (x-ray, Stress EKG, and Treadmill Thallium Test) were not identified either in a) the application signed by Ronnie Lane … or b) the medical examination portion of the application and notes signed by Ronnie Lane taken by Nurse Paulette Linder. The interview and medical examination by Nurse Linder was on October 10, 2002, seventeen (17) days after the ER visit and only ten (10) days after the Treadmill Test.

*  *  *

The omitted and misrepresented information in the application naturally and reasonably influenced the judgment of American General, materially increasing the risk of loss to American General in issuing the Policy. By denying to American General the information regarding the diseased condition of his cardiac and respiratory systems, which American General had explicitly requested in questions in the application, Mr. Lane precluded the company from making an informed and honest appraisal of his insurability. Had American General been apprised of the ER visit on 9/23/02 or the performance of an x-ray on that date, the company could have conducted additional investigation into Mr. Lane's cardiac condition, including his COPD and his heart. This health information is addressed in American General's underwriting rules and guidelines and would have been material to the consideration of the risk presented by Mr. Lane's application for insurance.

Had American General been aware of the true nature of Mr. Lane's health, based upon the underwriting rules and guidelines it relied upon at the time it considered Mr. Lane's application, American General would not have issued an insurance policy to insure his life or would have issued a rated policy at a higher premium.

American General's claim department denied Plaintiff's claim for benefits based upon the misrepresentations and omissions contained in Mr. Lane's application for insurance and a refund of all premiums has been tendered. (footnote omitted)

Wife responded to the motion for summary judgment and filed her own affidavit. The sum and substance of Wife's affidavit was summarized in her response to the motion for summary judgment as follows[4]:

On September 23, 2002, Mr. Lane made complaints to Mrs. Lane of right shoulder pain, and as a result, he was taken by ambulance to Fort Sanders Medical Center Emergency Room.

Mrs. Lane was with Mr. Lane the entire time he was at the Fort Sanders Medical Center on September 23, 2002. During the entire time Mr. Lane was at the Emergency Room on September 23, 2002, he made no complaints of chest pain.

During the time Mr. Lane was at Fort Sanders Medical Center on September 23, 2002, no doctor, nurse, or healthcare provider told Mr. Lane or Mrs. Lane that he had been diagnosed with chest pain.

At no time during Mr. Lane's visit to Fort Sanders Medical Center on September 23, 2002, was Mr. Lane or Mrs. Lane informed that he had been diagnosed with … COPD.

Mrs. Lane took her husband to the Knoxville Heart Group on September 30, 2002, where he underwent a treadmill test.

Mr. Lane informed Mrs. Lane that the doctor had told him that the results of the treadmill test were fine.

Mrs. Lane was present on the day when representatives of American General … came to their home for the purpose of selling Mr. and Mrs Lane insurance.

Mrs. Lane was present when the representatives of American General asked her husband questions relating to his health history.

Mr. Lane gave the answers to the questions asked by American General to the best of his knowledge and belief, insofar as he had never been informed that he had been diagnosed with chest pain, … COPD, or that a treadmill test had shown that he had possibly had a small heart attack in the past.

---

[4] We have omitted only the paragraph numbers and references to the appropriate section of the affidavit.

Mrs. Lane went on to assert that the application for insurance only requires the applicant to provide answers that are true "to the best of [the applicant's] knowledge and belief." Mrs. Lane then claimed that the information provided by her husband was to the best of his knowledge, information, and belief, and the motion for summary judgment should therefore be denied.

The Trial Court granted American General's motion for summary judgment. The Trial Court concluded that had American General been informed of the recent ER visit and the medical tests and the results of those tests, then the decedent would not have been insured or his premiums would have been higher.

Wife appeals raising the following issue: "Did the [Trial] Court err in reviewing the insurance application submitted by Mr. Lane pursuant to T.C.A. § 56-7-103, when the application required that the statements contained therein be complete and true only to the best of the applicant's 'knowledge and belief'."

## **Discussion**

In *Teter v. Republic Parking System, Inc.*, 181 S.W.3d 330 (Tenn. 2005), our Supreme Court recently reiterated the standards applicable when appellate courts are reviewing a motion for summary judgment. The Court stated:

> The purpose of summary judgment is to resolve controlling issues of law rather than to find facts or resolve disputed issues of fact. *Bellamy v. Fed. Express Corp.*, 749 S.W.2d 31, 33 (Tenn. 1988). Summary judgment is appropriate only when the moving party demonstrates that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law. *See* Tenn. R. Civ. P. 56.04; *Penley v. Honda Motor Co.*, 31 S.W.3d 181, 183 (Tenn. 2000); *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993). In reviewing the record, the appellate court must view all the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of the non-moving party. *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 89 (Tenn. 2000). And because this inquiry involves a question of law only, the standard of review is de novo with no presumption of correctness attached to the trial court's conclusions. *See Mooney v. Sneed*, 30 S.W.3d 304, 306 (Tenn. 2000); *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995).

*Teter*, 181 S.W.3d at 337.

The relevant statutory provision is Tenn. Code Ann. § 56-7-103 (2000), which provides as follows:

**56-7-103. Misrepresentation or warranty will not avoid policy - Exceptions. -** No written or oral misrepresentation or warranty therein made in the negotiations of a contract or policy of insurance, or in the application therefor, by the insured or in the insured's behalf, shall be deemed material or defeat or void the policy or prevent its attaching, unless such misrepresentation or warranty is made with actual intent to deceive, or unless the matter represented increases the risk of loss.

In *Smith v. Tennessee Farmers Life Reassurance Co.*, 210 S.W.3d 584 (Tenn. Ct. App. 2006), this Court discussed Tenn. Code Ann. § 56-7-103 as follows:

> Tenn. Code Ann. § 56-7-103 authorizes an insurance company to deny a claim for benefits in two circumstances - if the insured made intentional misrepresentations on the application for insurance or if the insured made misrepresentations that increased the insurer's risk of loss.… [D]etermining whether a particular misrepresentation increases an insurance company's risk of loss is a question of law for the court. *Broyles v. Ford Life Ins. Co.*, 594 S.W.2d 691, 693 (Tenn. 1980); *Vermont Mut. Ins. Co. v. Chiu*, 21 S.W.3d 232, 235 (Tenn. Ct. App. 2000).…

> \* \* \*

> Tenn. Code Ann. § 56-7-103 authorizes an insurance company to deny a claim if the insured obtains the policy after misrepresenting a matter that increased the company's risk of loss. A misrepresentation in an application for insurance increases the insurance company's risk of loss if it naturally and reasonably influences the judgment of the insurer in making the contract. *Vermont Mut. Ins. Co. v. Chiu*, 21 S.W.3d at 235; *Sine v. Tennessee Farmers Mut. Ins. Co.*, 861 S.W.2d 838, 839 (Tenn. Ct. App. 1993); *Seaton v. National Grange Mut. Ins. Co.*, 732 S.W.2d 288, 288-89 (Tenn. Ct. App. 1987). It need not involve a hazard that actually produced the loss in question. *Loyd v. Farmers Mut. Fire Ins. Co.*, 838 S.W.2d 542, 545 (Tenn. Ct. App. 1992).

> The courts may use the questions an insurance company asks on its application to determine the types of conditions or circumstances that the insurance company considers relevant to its risk of loss. *Johnson v. State Farm Life Ins. Co.*, 633 S.W.2d 484, 487 (Tenn. Ct. App. 1981). Additionally, the courts frequently rely on the testimony of insurance company representatives to establish

how truthful answers by the proposed insured would have affected the amount of the premium or the company's decision to issue the policy. *See, e.g., Bagwell v. Canal Ins. Co.*, 663 F.2d 710, 712 (6th Cir. 1981); *Vermont Mut. Ins. Co. v. Chiu*, 21 S.W.3d at 235. A finding that the insurer would not have issued the policy had the truth been disclosed is unnecessary; a showing that the insurer was denied information that it, in good faith, sought and deemed necessary to an honest appraisal of insurability is sufficient to establish the grounds for an increased risk of loss. *Vermont Mut. Ins. Co. v. Chiu*, 21 S.W.3d at 235; *Loyd v. Farmers Mut. Fire Ins. Co.,* 838 S.W.2d at 545....

Tenn. Code Ann. § 56-7-103 does not require a "material" increase in the risk of loss before an insurance claim can be rejected. It is the misrepresentation that must be material, and the statute clearly states that a misrepresentation will not be deemed material unless it increases the risk of loss to the insurer. Therefore, the correct inquiry in cases involving Tenn. Code Ann. § 56-7-103 is simply whether the misrepresentation increased the insurance company's risk of loss.

*Smith*, 210 S.W.3d at 589-91.

Wife's primary argument on appeal is that the decedent answered the questions to the best of his "knowledge and belief" as stated on the application and the Trial Court, therefore, erred when it granted American General's motion for summary judgment. We agree with Wife to a limited extent. Because the insurance policy requires the applicant only to answer the questions to the best of his or her "knowledge and belief", we do not believe the statute mandates a loss of benefits when the questions are answered to the best of the applicant's "knowledge and belief," even if the answer is wrong and the insurance company can show an increase in the risk of loss. For example, taking Wife's affidavit as true, when Mr. Lane indicated he had not been diagnosed with chest pain or as having had a mild heart attack in the past, that response may have been true to the best of his "knowledge and belief," even though it was wrong and the medical records themselves would have established otherwise. Just because a response is incorrect does not necessarily make that response a misrepresentation given the language of the application requiring the applicant to answer only to the best of his "knowledge and belief." Wife's affidavit certainly creates a genuine issue of material fact as to whether or not the decedent ever complained of chest pains or whether Mr. Lane was told of a diagnosis of chest pain, COPD, or that he had possibly suffered a mild heart attack with permanent injury. Accordingly, Wife established a genuine issue of material fact as to whether Mr. Lane's responses that he had not been diagnosed with COPD, chest pain, or a mild heart attack were accurate based upon Mr. Lane's "knowledge and belief."

Notwithstanding the foregoing, Wife failed to establish a genuine issue of material fact regarding whether Mr. Lane answered certain other questions accurately to the best of his

knowledge and belief. Specifically, Mr. Lane failed to list on the application or during the medical examination that he had been treated at the Fort Sanders ER or that he had been treated by the Knoxville Heart Group just a few short weeks before making the application. None of this treatment was mentioned when Mr. Lane was asked to list all doctors and hospitals where he had been treated in the past five years. Mr. Lane's failure to identify this treatment resulted in American General not obtaining the pertinent medical records from these health care providers. In addition, Mr. Lane was asked whether an x-ray, an electrocardiogram, or any other diagnostic test had been performed in the past 5 years. He responded "no", even though he had just within weeks had an x-ray, an electrocardiogram, and another diagnostic test, i.e., the Treadmill Thallium test.

Even applying what Wife maintains is a lesser burden than that created by Tenn. Code Ann. § 56-7-103 on Mr. Lane as an insurance applicant because of the "knowledge and belief" language of the insurance application, the record shows that there is no *genuine* issue of material fact as to Mr. Lane's having knowledge that he had been treated at the Fort Sanders' ER and the Knoxville Heart Group less than a month prior to his making the application. Likewise, the record demonstrates that there is no *genuine* issue of material fact as to Mr. Lane's knowledge that he had an x-ray, an electrocardiogram, and other diagnostic tests performed less than a month before he submitted his application. Accordingly, we agree with the Trial Court that there is no genuine issue as to the material facts and the undisputed material facts were such that Mr. Lane made misrepresentations that were material because they increased the risk of loss. The grant of summary judgment to American General is, therefore, affirmed.

### Conclusion

The judgment of the Chancery Court is affirmed, and this cause is remanded to the Chancery Court for collection of the costs below. Costs on appeal are taxed to the Appellant, Pamela Lane, and her surety.

_____
D. MICHAEL SWINEY, JUDGE