IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
September 7, 2022 Session

## SHELBY IRELAND v. TENNESSEE FARMERS LIFE INSURANCE COMPANY ET AL.

**Appeal from the Chancery Court for Maury County**
**No. 2020-CV-032    J. Russell Parkes, Judge**

_____

### No. M2021-01360-COA-R3-CV

_____

This appeal challenges a grant of summary judgment to an insurance company on a breach of contract claim for failing to honor a life insurance policy. The chancery court concluded the policy was void because of misrepresentations made by the decedent in obtaining coverage. The beneficiary, the spouse of the decedent, argues disputed facts exist both as to whether any misrepresentations were made and whether any of the purported misrepresentations increased the insurer's risk of loss. Accordingly, the beneficiary contends that the chancellor erred in awarding summary judgment. We find no error and affirm the trial court's grant of summary judgment.

 **Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

JEFFREY USMAN, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and KRISTI M. DAVIS, J., joined.

Parks T. Chastain and Hannah J. Leifel, Nashville, Tennessee, for the appellant, Shelby Ireland.

C.E. Hunter Brush, Nashville, Tennessee, for the appellees, Tennessee Farmers Life Insurance Company and Chad Cox.

## OPINION

### I.

Two days before he died of hepatic steatosis, also known as fatty liver disease, Mr. Lynden Ireland completed a certificate of good health ("COGH"), seeking to add $150,000 in life insurance on top of an existing $250,000 life insurance policy. Since 2012, Mr.

Ireland had held a life insurance policy with Tennessee Farmers Life Insurance Company (insurer or Farmers) for $250,000.  That policy was paid after Mr. Ireland's death and is not the subject of this litigation.  It is the $150,000 in additional coverage, which Mr. Ireland sought to add shortly before his death and which the insurer has declined to pay, that is the subject of the parties' dispute.

In October of 2018, Mr. Ireland approached his insurance agent Chad Cox about replacing his existing $250,000 life insurance policy with a new twenty-year term $500,000 policy.  The insurer's application for an increase in coverage provided that the insurance would not take effect unless a policy was delivered, the first month's premium was paid, and there was no change in the insurability of the insured from the date of application.  Mr. Ireland completed a medical questionnaire as part of the application.  On the questionnaire, Mr. Ireland responded, "No," to a question asking if he had "ever been treated for or ever had any known indication of: …. Jaundice, intestinal bleeding, ulcer, hernia, appendicitis, colitis, diverticulitis, hepatitis, Crohn's disease, hemorrhoids, recurrent indigestion, *or other disorder of the* stomach, intestines, *liver*, gallbladder, pancreas, or spleen." (Emphasis added.)  Mr. Ireland also submitted to a medical examination in which he tested positive for an alcohol marker and showed elevated liver enzymes.

Given the findings of the medical examination, in order to obtain the increased coverage, Mr. Ireland would have had to pay an additional 250 percent in monthly premiums.  Instead of paying these higher premiums, Mr. Ireland consulted with his insurance agent and decided to proceed with a modified approach.  He would obtain a new twenty-year term policy, as planned, but for $250,000 rather than $500,000. This policy was set to go into effect on December 28, 2018, but it was subject to Mr. Ireland's completion of a COGH, execution of an amendment reflecting the changed amount of insurance sought, and payment of the first month's premium of $44.83.  Mr. Ireland did not complete the COGH before the effective date or pay the premium for the $250,000 policy.  Consequently, this new policy did not go into effect.

On December 29, 2018, Mr. Ireland suffered a fall that resulted in a trip to an emergency room.  Having consumed a "large amount of alcohol" on the previous evening, Mr. Ireland became dizzy and fell from a deer stand from which he had been hunting.  He went to the Williamson Medical Center emergency room.  He was released the same day.  According to a three-page Williamson Medical Center document entitled "Patient Signature Page," Mr. Ireland was "Seen Today for" three things: acute head injury, concussion, and steatosis of the liver.

Under the heading "Activity Restrictions or Additional Instructions," Mr. Ireland was informed,

> Your laboratory studies and CT evaluation today did not reveal [the] presence of any acute abnormality.  There was noted to be a finding of "fatty

liver". This is not related to your fall today and can be related to diet, alcohol consumption or obesity. Please advise your PCP of this finding.

The remainder of the "Additional Instructions" concluded that Mr. Ireland had likely suffered a concussion, instructed him on the treatment, causes, and symptoms of concussions, and advised him to return if he experienced certain concussion symptoms. Under the heading "Follow-Ups," Mr. Ireland was told he had "been referred to the following clinics/specialists for follow-up care," and he was given contact information for Dr. Brad Maltz and Williamson Primary Care. On the third page of the "Patient Signature Page," Mr. Ireland signed to certify that he had reviewed the form, acknowledging, "I have read and understand the instructions given to me by my caregivers."

On January 24, 2019, approximately a month after his visit to the Williamson Medical Center, Mr. Ireland met again with Mr. Cox to discuss his insurance. Mr. Ireland sought to keep his 2012 policy for $250,000 and to change his application from a $250,000, twenty-year term policy to a $150,000, Secure Annual Renewable Term policy. Mr. Ireland filled out a "Life Customer Service Request" form which indicated he desired a "Plan Change." Handwritten notes under "Special Request" indicate: "Please redate policy 1/24/2019"; "The new monthly premium will be $27.89"; and "[The 2012 policy] will not be replaced." Mr. Ireland paid the first month's premium and was provided with a simple receipt, which differed from a conditional receipt that he had received on a previous occasion. No policy, however, was delivered.

As part of adding to his insurance coverage, Mr. Ireland also completed the certificate of good health (COGH) at this time. The COGH form posed five questions:

Since the date of the original application for the above policy or latest examination, has any person proposed for insurance (including riders):

(1)     Made application to another company for Life Ins. (a) which has been issued, declined, postponed, or modified or (b) which is pending at the present time?

(2)     Consulted or been examined or treated by a physician or practitioner?

(3)     Realized any fact which would require any change in the answer to any question, or in any statement made in the original application?

(4)     Had any change in occupation?

(5)     Engaged in aviation activities or any hazardous sports, avocations or hobbies, or does any one expect to do so?

- 3 -

Mr. Ireland answered yes to question two and no to questions one, three, four, and five. The form instructs that "[i]f there is a yes answer to any of the above questions, give full details in the space below." The handwritten addition to Mr. Ireland's COGH written by Mr. Cox with the information provided by Mr. Ireland stated the following: "12/29/18. Insured was deer hunting and fell out [of a] deer stand. Went to Williamson Medical Emergency Room. Had a mild concussion. Had a [CT] scan and was release[d]. Was not recommended for any follow[-]up." In signing the form, the document stated that the insured represented "to the best of his or her knowledge and belief that the above statements are true and complete and that all details have been given." Mr. Ireland signed the form.

Two days later, Mr. Ireland passed away from complications of fatty liver, hepatic steatosis. Shelby Ireland, the beneficiary under both policies, demanded payment. Farmers honored coverage under the 2012 policy for $250,000 but denied coverage under the $150,000 policy that was the subject of the "Life Customer Service Request" form. In May of 2019, Farmers sent Ms. Ireland a letter declining coverage and refunding the $27.89 premium paid by Mr. Ireland. The insurer indicated that additional underwriting had been necessitated by Mr. Ireland's answer on the COGH form. Farmers added that "[t]he decision to decline was based on information from an admission to William Medical Center . . . indicating fatty liver and steatosis by CT findings with increased liver function tests, which had tripled since [the] blood profile in November."

Ms. Ireland brought suit against Farmers, Mr. Cox, and Port Royal Farm Bureau Insurance,[1] asserting breach of contract, bad faith refusal to pay, intentional or negligent misrepresentation, and failure to procure.

The defendants moved for summary judgment on various grounds, including most notably that no contract was ever in effect because certain conditions precedent had not been met and that if there was a contract that it was voidable because of material misrepresentations or omissions in the COGH. Ms. Ireland opposed the motion for summary judgment. She submitted an affidavit asserting that she was with Mr. Ireland when he was discharged from the emergency room. She indicated that "[w]hen Mr. Ireland was discharged after the ER Visit, there were no recommendations to follow up with a medical professional unless he exhibited symptoms related to the fall from the tree stand that occurred in the morning of December 29, 2018."

The Maury County Chancery Court granted summary judgment to Farmers on one but not both its primary asserted grounds. The chancellor declined to award summary judgment on the basis that no contract existed, finding genuine material disputed facts as to whether a contract had been formed for the $150,000 insurance policy. As to the other ground, a void insurance contract based upon misrepresentations, the chancellor concluded

---

[1] Ms. Ireland does not dispute Farmers' assertion that Port Royal Farm Bureau Insurance is not a separate legal entity and has not been treated as a party to this case.

that there were no genuine disputed material facts. The chancellor indicated that Mr. Ireland made misrepresentations in his application and those misrepresentations increased the risk of loss to Farmers, rendering any policy void under Tennessee Code Annotated section 56-7-103. The chancellor found the facts established that Mr. Ireland had been diagnosed with steatosis of the liver and advised to consult a primary care physician and that he did not disclose this information in his COGH. The chancellor added that Mr. Ireland had signed a discharge document indicating that he had read and understood the information related to the finding of fatty liver. Accordingly, the chancellor awarded summary judgment to the insurer.

Ms. Ireland appeals the chancery court's order granting summary judgment on the breach of contract claim by Farmers.[2] Ms. Ireland asserts that the chancellor erred in granting summary judgment. She contends that there exist material disputed facts as to whether Mr. Ireland's answers to the questions on the COGH were misrepresentations and, if there are any misrepresentations, whether they increased the risk of loss to the insurer. Farmers asserts that the undisputed facts establish that Mr. Ireland made misrepresentations through omissions regarding his liver disease and that these misrepresentations increased Farmers' risk of loss. Farmers also argues that the trial court should have granted summary judgment on the basis that there was no contract in place. We conclude that the trial court correctly determined that the undisputed facts establish that Mr. Ireland made misrepresentations on his COGH and that the misrepresentations increased Farmers' risk of loss. Accordingly, we affirm the trial court's order granting summary judgment.[3]

## II.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. In making this assessment, a court must view the evidence "in a light most favorable to the claims of the nonmoving party, with all reasonable inferences drawn in favor of those claims." *Cotten v. Wilson*, 576 S.W.3d 626, 637 (Tenn. 2019) (quoting *Rye v. Women's Care Ctr. of Memphis, MPLLC,* 477 S.W.3d 235, 286 (Tenn. 2015)). An appellate court's review of "a trial court's summary judgment decision is de novo without a presumption of correctness." *Regions Bank v. Prager*, 625 S.W.3d 842, 849 (Tenn. 2021). In conducting this review, a Tennessee appellate court makes "a fresh determination of whether the requirements of Rule 56 of the Tennessee

---

[2] Ms. Ireland does not challenge on appeal the summary dismissal of her claims of failure to procure or misrepresentation against Mr. Cox.

[3] Because we conclude that summary judgment was properly granted on the basis that Mr. Ireland made misrepresentations on the application and that the misrepresentations increased the risk of loss, we do not reach the issue of whether summary judgment should likewise have been granted on the ground that no contract was in place.

Rules of Civil Procedure have been satisfied." *Rye*, 477 S.W.3d at 250.

III.

The parties' dispute in this appeal centers upon whether Mr. Ireland made misrepresentations in completing his certificate of good health (COGH), whether any misrepresentations that he may have made increased the risk of loss to the insurer, and whether a genuine dispute over material facts exists as to either misrepresentation or risk of loss. Tennessee Code Annotated § 56-7-103 makes the exact terrain contested by the parties critical in determining whether the contested insurance policy is void.

Under Tennessee law,

> [n]o written or oral misrepresentation or warranty made in the negotiations of a contract or policy of insurance, or in the application for contract or policy of insurance, by the insured or in the insured's behalf, shall be deemed material or defeat or void the policy or prevent its attaching, unless the misrepresentation or warranty is made with actual intent to deceive, or unless the matter represented increases the risk of loss.

Tenn. Code Ann. § 56-7-103. To avoid coverage, the insurer must first show a false representation or warranty by the insured. *Womack v. Blue Cross & Blue Shield of Tenn.*, 593 S.W.2d 294, 295 (Tenn. 1980); *Owens v. Tenn. Rural Health Improvement Ass'n*, 213 S.W.3d 283, 285-86 (Tenn. Ct. App. 2006). Next, to avoid coverage, the insurer must demonstrate either that the insured made the false representation or warranty with intent to deceive or alternatively that the falsity increased the risk of loss to the insurance company. *Womack*, 593 S.W.2d at 295; *Owens*, 213 S.W.3d at 286; *see also*, *e.g.*, *State Farm Gen. Ins. Co. v. Wood*, 1 S.W.3d 658, 661 (Tenn. Ct. App. 1999) ("It is clear that the language of the statute is disjunctive, *i.e.*, the insurer may show either 1) that the misrepresentation was made with the intent to deceive, *or* 2) that the matter represented increased the risk of loss.").

A. Misrepresentation

Tennessee courts have interpreted the statutory "written or oral misrepresentation" language to apply not only to false affirmative statements but also to material omissions made when applying for insurance coverage. *First Tenn. Bank Nat'l Ass'n v. U.S. Fid. & Guar. Co.*, 829 S.W.2d 144, 147 (Tenn. Ct. App. 1991); *see also Smith v. Tenn. Farmers Life Reassurance Co.*, 210 S.W.3d 584, 591 (Tenn. Ct. App. 2006). In general, the determination of whether an applicant misrepresented information in the application is a question of fact. *Womack*, 593 S.W.2d at 295. The factfinder must be permitted to determine whether the answers on the application were misrepresentations "unless the minds of reasonable men could reach only one conclusion as to whether the answers were

- 6 -

true or false." *Id.*

Ms. Ireland asserts that there is a genuine dispute of material fact regarding whether Mr. Ireland's answers on the COGH constituted misrepresentations. In particular, Ms. Ireland argues that her affidavit creates a genuine issue of material fact regarding whether Mr. Ireland answered the questions on the COGH to the best of his knowledge and belief. Farmers responds along two tacks. One, Farmers contends that whether Mr. Ireland answered the questions on the COGH to the best of his knowledge and belief is irrelevant if his responses were incorrect and increased the insurer's risk of loss. Two, Farmers argues that, even if Mr. Ireland's knowledge and belief are relevant, there are no genuine disputed material facts regarding whether Mr. Ireland knew and understood material information regarding his liver disease that he failed to disclose in response to questions from the insurer on his COGH.

Farmers' contention that Mr. Ireland's knowledge and belief in responding to the insurer's questions on the COGH are irrelevant runs squarely into prior precedent of this court. In *Lane v. American General Life & Accident Insurance Company*, a trial court granted summary judgment to an insurer finding the policy to be void based on misrepresentations made by the decedent in his application for life insurance. 252 S.W.3d 289, 291 (Tenn. Ct. App. 2007). The primary argument of the insurance beneficiary on appeal before this court was that no misrepresentation had occurred because "the decedent answered the questions to the best of his 'knowledge and belief.'" *Id*. at 296. While the *Lane* court ultimately upheld the grant of summary judgment because some of the decedent's answers stretched the concept of knowledge and belief too far, the court did embrace aspects of the beneficiary's argument. *Id.* at 296-97. This court indicated that

> [b]ecause the insurance policy requires the applicant only to answer the questions to the best of his or her "knowledge and belief", we do not believe the statute mandates a loss of benefits when the questions are answered to the best of the applicant's "knowledge and belief," even if the answer is wrong and the insurance company can show an increase in the risk of loss . . . .. Just because a response is incorrect does not necessarily make that response a misrepresentation given the language of the application requiring the applicant to answer only to the best of his "knowledge and belief."

*Id*.

The same is true in this case. The COGH through which Mr. Ireland is purported to have made his misrepresentations in the form of material omissions provides that the responses are given "to the best of his . . . knowledge and belief." Farmers suggests this knowledge and belief language of the COGH can be erased. We find this contention unconvincing. The language of Farmers' COGH that provides the responses are "to the

best of" the insured's "knowledge and belief" cannot simply be erased.[4]   The insurer cannot, in seeking to void an insurance policy, demand that the insured meet a higher standard than that which was communicated on the form that the insurer is asserting was mistakenly completed.  In light of this court's precedent in *Lane* and the language of this contract, the assessment of misrepresentation must, accordingly, occur within the prism of Mr. Ireland's knowledge and belief.

When assessed within that prism, Ms. Ireland argues there is a genuine issue of material fact as to whether Mr. Ireland made a misrepresentation given the state of his knowledge and belief and that, accordingly, granting summary judgment was improper. We find this argument unconvincing.  Just under a month before he died, Mr. Ireland was seen in the Williamson Medical Center emergency room, and one of the three things that he was seen for that day was steatosis of the liver.  He was examined by medical professionals and informed of a finding of fatty liver.  He was advised to inform his primary care physician of this finding.  In being released from Williamson Medical Center, Mr. Ireland signed a document indicating that he had read and understood this.  Mr. Ireland, however, did not inform Farmers of any examination of or findings as to his liver in his COGH.  His understanding that the Williamson Medical Center visit on December 29, 2018, fell within the scope of what he was required to disclose on the COGH is reflected in his affirmative response to the second question and his providing information related to his examination for a concussion at that same hospital visit.  Despite the COGH form directing him to "give full details" Mr. Ireland failed to inform Farmers about the examination of his liver that occurred and the findings as to fatty liver that were made as part of the same hospital visit.  He also failed to provide this information despite representing with his signature that his statements on the COGH "are true and complete and that all details have been given."

In contravention of this showing of misrepresentation, as a basis for asserting the existence of a genuine dispute as to a question of material fact, Ms. Ireland offers her own affidavit.  In her affidavit, she observes that she was with Mr. Ireland when he was discharged from Williamson Medical Center and that there were no oral or written recommendations that Mr. Ireland follow up with a medical professional unless he exhibited symptoms related to the fall from the tree.

Ms. Ireland's affidavit does not undermine the chancellor's conclusion that there was no genuine disputed fact as to whether Mr. Ireland's COGH included a misrepresentation.   In the *Lane* case, which Ms. Ireland leans upon heavily, the beneficiary's affidavit attested to being present with her husband for his entire hospital visit and denied that her husband had stated he was suffering from certain symptoms, which he

---

[4] *See generally Purkey v. Am. Home Assur. Co.*, 173 S.W.3d 703, 705 (Tenn. 2005) (noting that "[i]nsurance policies are contracts between the insurer and the insured and as such are subject to ordinary rules of contract interpretation").

failed to disclose on his insurance application, or that he had been informed of certain diagnoses, which he had also failed to disclose on his application. 252 S.W.3d at 296. The *Lane* court regarded the affidavit as creating a genuine material issue of fact with regard to what the decedent had said to medical personnel during this hospital visit and what he had been informed of by hospital personnel regarding actual diagnosis. *Id.* at 296-97. Accordingly, on these points, the *Lane* affidavit served to create a basis for material disputed facts for purposes of assessing what was within the knowledge and belief of the decedent.

The present case is distinguishable. Ms. Ireland's affidavit falls short of creating a genuine issue of material fact regarding misrepresentations on Mr. Ireland's COGH. Ms. Ireland's affidavit established at most a dispute regarding whether the follow-up recommendations regarding liver disease were communicated to Mr. Ireland when he was discharged.

The "Patient Signature Page" document that Mr. Ireland signed informed him that he had been examined for and been found to have a liver disorder. "Generally, the law presumes that a person who has signed a document, after having an opportunity to read it, is bound by his signature." *Mitchell v. Kayem*, 54 S.W.3d 775, 781 (Tenn. Ct. App. 2001); *see Beasley v. Metro. Life Ins. Co.*, 229 S.W.2d 146, 148 (Tenn. 1950) (holding that a party who signs a contract is presumed to know its contents); *see also Est. of Howard v. First Cmty. Bank of E. Tenn.*, No. E2007-02391-COA-R3-CV, 2009 WL 499541, at *12 (Tenn. Ct. App. Feb. 27, 2009) (concluding that medical treatment the deceased had just received would have been in his consciousness). This presumption has been applied to medical forms. *See, e.g., Church v. Perales*, 39 S.W.3d 149, 161 (Tenn. Ct. App. 2000) (noting that "the law presumes that patients ordinarily read and take whatever other measures are necessary to understand the nature, terms, and general meaning of consent forms involving medical treatment"). This presumption has also been applied to insurance applications. *Freeze v. Tenn. Farmers Mut. Ins. Co.*, 527 S.W.3d 227, 234 (Tenn. Ct. App. 2017) ("The failure to read an application for insurance does not insulate an applicant from errors or omissions in a signed application. A party's signature binds him or her as [a] matter of law to the representations in the signed document." (quoting *Smith*, 210 S.W.3d at 591)). In considering the impact of the signature on this patient discharge form, this case does not raise a factually supported contention that Mr. Ireland had not read, understood, or paid attention to the discharge document which contained information about the examination of his liver and the condition thereof. Asked specifically at oral argument whether there was any denial in the affidavit that Mr. Ireland had read the patient discharge information or an addressing of the manner in which Mr. Ireland had read the document, counsel for Ms. Ireland appropriately and correctly indicated there was not.[5] Accordingly, we do not have

---

[5] Judge's Question: "Counsel is there any denial in the affidavit that he read the patient discharge information? Is there any sort of express addressing of how he read it or didn't read it?"

before us the question of how such facts might affect the assessment of the impact of a signature on such a form when considering the question of misrepresentation within the prism of an insured's knowledge and belief.

Mr. Ireland signed the "Patient Signature Page," indicating that he had read and understood the instructions that included information indicating he had been examined for and determined to have "fatty liver." Assuming that Ms. Ireland's affidavit creates a material disputed issue as to whether Mr. Ireland was advised to follow up about this condition at discharge, the affidavit, nevertheless, still does not undermine the chancellor's conclusion that Mr. Ireland's liver was examined while at the Williamson Medical Center and that he was informed of this examination and alerted of the existence of a fatty liver. All of this is information that Mr. Ireland failed to disclose on his COGH. Accordingly, the chancery court did not err in concluding that reasonable minds could only reach one conclusion regarding whether the statements on the COGH constituted a misrepresentation. *See Womack*, 593 S.W.2d at 295.

## B. Risk of Loss

Ms. Ireland asserts that even if there were misrepresentations, Farmers failed to establish that the misrepresentations were material such that they increased Farmers' risk of loss. She argues that the limited scope of the questions in the COGH demonstrates that Farmers did not seek the information related to Mr. Ireland's liver disease. Farmers argues that the undisputed facts demonstrate that Mr. Ireland's misrepresentations increased the risk of loss. We agree that there is no genuine issue of material fact regarding whether the misrepresentations increased the risk of loss.

The chancery court correctly found that the misrepresentations increased the insurer's risk of loss. Interestingly, the question of whether a misrepresentation increases the risk of loss to an insurer has long been considered a question of law for the court in Tennessee.[6] A trial court's conclusion as to risk of loss in this context is reviewed de novo on appeal. *Smith*, 210 S.W.3d at 589; *Vt. Mut. Ins. Co. v. Chiu*, 21 S.W.3d 232, 235 (Tenn. Ct. App. 2000). "A misrepresentation increases the risk of loss when it is of such importance that it 'naturally and reasonably influences the judgment of the insuror in making the contract.'" *Sine v. Tenn. Farmers Mut. Ins. Co.*, 861 S.W.2d 838, 839 (Tenn. Ct. App. 1993) (quoting *Seaton v. Nat'l Grange Mut. Ins. Co.*, 732 S.W.2d 288, 288-89 (Tenn. App. 1987)). The misrepresentation need not relate to the hazard which produced

---

Counsel for Ms. Ireland's Answer: "No there is not."

[6] *See generally Mut. Life Ins. Co. v. Dibrell*, 137 Tenn. 528, 194 S.W. 581, 581-84 (1916) (discussing the history of risk of loss analysis under the Tennessee Code); *see also*, *e.g.*, *Freeze*, 527 S.W.3d at 232 (quoting *Smith*, 210 S.W.3d at 589); *Little v. Wash. Nat'l Ins. Co.*, 34 Tenn. App. 593, 598, 241 S.W.2d 838, 840 (1951).

the loss. *Loyd v. Farmers Mut. Fire Ins. Co.*, 838 S.W.2d 542, 545 (Tenn. Ct. App. 1992). Neither is there any requirement to demonstrate that the policy would not have been issued absent the misrepresentation. *Id.* Instead, "[i]t is sufficient that the insurer was denied information which it sought in good faith and which was deemed necessary to an honest appraisal of insurability." *Id.* Courts may use the questions asked by an insurance company on its application to determine the information which the insurance company deems relevant to its risk of loss. *Smith*, 210 S.W.3d at 590. In considering risk of loss, courts "frequently rely on the testimony of insurance company representatives to establish how truthful answers by the proposed insured would have affected the amount of the premium or the company's decision to issue the policy." *Tenn. Farmers Mut. Ins. Co. v. Farrar*, 337 S.W.3d 829, 835-36 (Tenn. Ct. App. 2009) (quoting *Est. of Howard v. First Cmty. Bank of E. Tenn.*, No. 2007-02391-COA-R3-CV, 2009 WL 499541, at *11 (Tenn. Ct. App. Feb. 27, 2009)).

Here, Farmers asked Mr. Ireland in the initial medical questionnaire whether he had ever been treated for or ever had any known indication of a liver disorder. In the COGH, Farmers asked whether Mr. Ireland, "[s]ince the date of the original application for the above policy or latest examination," had "[r]ealized any fact which would require any change in the answer to any question, or in any statement made in the original application." Accordingly, it appears that Farmers found "any known indication of" liver disorder relevant to its analysis of the risk of loss. The COGH also inquired whether Mr. Ireland had "[c]onsulted or been examined or treated by a physician or practitioner" since the date of the application or latest examination. It asked Mr. Ireland to "give full details," and it reiterated above the signature that the information was "true and complete" to the best of his knowledge and that "all details have been given." These questions indicate that Farmers found the full details of any intervening medical treatment, consultation, or examination relevant to the risk of loss. Farmers also submitted the declaration of the Assistant Vice President of Farmers' Underwriting Department, indicating that based on Mr. Ireland's diagnosis of steatosis and based on his elevated liver enzymes from the emergency room examination, he would have been deemed uninsurable. Accordingly, it is abundantly clear that the trial court did not err in concluding that the misrepresentations affected the risk of loss. *See Est. of Howard*, 2009 WL 499541, at *12 (the insured's "intentional failure to disclose his chronic liver disease unquestionably increased [the insurance company's] risk of loss, as abundantly evidenced by the fact that [the insured] was dead from that ailment less than six months later"); *Hammond v. Indep. Life & Accident Ins. Co.*, 589 S.W.2d 913, 918 (Tenn. Ct. App. 1979) (the failure of the insured to disclose that he had a known indication of a liver disorder influenced the issuance of the policy and therefore increased the risk of loss). We conclude that the trial court properly found the misrepresentation increased the risk of loss to the insurer.

## CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded with costs

of appeal assessed against the appellant, Shelby Ireland, for which execution may issue if necessary.

_____
JEFFREY USMAN, JUDGE